STATE of Tennessee, Appellee,

v.

Manuel A. PHILPOTT, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

March 23, 1994.

Permission to Appeal Denied by Supreme Court July 5, 1994.

Robert L. Smith, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, Randall E. Nichols, Dist. Atty. Gen., Robert L. Jolley, Jr., Asst. Dist. Atty., Knoxville, for appellee.

## OPINION

WHITE, Judge.

The appellant, Manuel Philpott, appeals as of right from a judgment entered on November 9, 1992, in which he was sentenced to eight years for two counts of armed robbery.

On appeal, appellant raises a number of issues.[1] In addition to challenging the sufficiency of the evidence, appellant argues that the use of impermissibly suggestive identification procedures, the state's failure to disclose an exculpatory statement, the improper impeachment of a crucial defense witness, the admission of two tape-recorded statements of an unavailable witness, and the prosecution's prejudicial closing argument denied him his constitutional right to a fair trial.

Finding no error warranting reversal, appellant's conviction on two counts of armed robbery is affirmed.

### I. *Sufficiency of the Evidence*[2]

Since the appellant contends that the evidence at trial is insufficient to support his conviction, we have undertaken a thorough review of the record. A brief summary of the facts follows.

On the evening of March 18, 1989, at about 9:30 p.m., James Bowyer and Steve Schudel were robbed at gun point as they were preparing to enter Bowyer's residence at Golf Range Apartments in Knoxville. Two black men approached them. One of the robbers grabbed Schudel and held him against a wall. The other man held a gun on Bowyer and took their valuables, jewelry, and wristwatches. He also took Bowyer's glasses and threw them on the ground. The man who was holding Schudel repeated, "Let's pop'em." After giving up their valuables, the victims were released and entered the apartment. The robbers fled while the victims called the police.

Bowyer had a clear view of both robbers throughout the entire incident. He was able to describe both men. A couple of days after the robbery, Bowyer looked at photographs of potential suspects and identified Chris McHoward, appellant's co-defendant,[3] as the man with the gun and appellant, Manuel Philpott, as the man who held Schudel. Schudel did not get a clear look at the man

---

1. Appellant lists twelve separate issues. For ease of presentation, we have grouped these issues into the five sections described in the text.

2. Appellant's issue number 1.

3. McHoward's case was resolved separately.

who was holding him. He was, however, able to give a description of the man with the gun. After viewing the photograph array, he positively identified Chris McHoward. He selected appellant's picture as possibly resembling the man who had held him against the wall.

On March 19, 1989, a Pigeon Forge police officer made a traffic stop of a car driven by Chris McHoward. Appellant and Broderick Walker, who testified at trial as appellant's alibi witness, were also in the car. The officer saw McHoward put something into his pocket and noticed that Philpott had reached under the front seat. The officer was not certain whether Philpott had attempted to hide something or remove something. Upon further investigation the officer found an ammunition box and a gun in McHoward's possession. Appellant was wearing James Bowyer's watch. Officers found a wallet under the front seat and, in the glove compartment, two credit cards and a ring. These items were later identified as belonging to James Bowyer.

At this time Chris McHoward, Manuel Philpott, and Broderick Walker were students and football players at Knoxville College. McHoward and Philpott were roommates. At trial, Walker testified that on the evening of March 18, 1989, Philpott and he were together from 5:00 p.m. to 10:00 p.m. At about ten o'clock, McHoward and another student, Mario Lee, returned to the dorm carrying pizza and wine. The four went to Philpott's room where, after a time, a fight broke out when Lee poured wine on Walker. According to Walker, there was noticeable tension between Lee and McHoward.

Appellant testified that he and Walker had eaten supper and worked out together until about ten o'clock. He claimed to have borrowed the watch from Mario Lee and to have not been aware that there were any stolen items in McHoward's car when it was stopped in Pigeon Forge.

A tape recording of a conversation between Steven Oberman, appellant's former attorney, and Mario Lee was played in its entirety for the jury.[4] In the tape, Lee

confessed that he had participated with McHoward in the robbery of Bowyer and Schudel and that he and McHoward had committed an earlier robbery as well. The state, in rebuttal, entered into evidence a tape recording of a conversation between a person who identified himself as Lee and an investigator for the Knox County district attorney's office. In this conversation, Lee denied any knowledge of the robbery and denied making any statement in which he confessed to the crime.

When the sufficiency of the evidence is challenged, the standard for review by an appellate court is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn.1985); Rule 13(e) Tenn.R.App.P. In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence, *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). We cannot substitute our inferences for those drawn by the trier of fact, *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn.Crim.App.), *cert. denied*, (Tenn.1978), and should not disturb a guilty verdict due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from these facts, are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Jackson*, 814 S.W.2d 740, 743 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1991).

Since a guilty verdict against a defendant removes the presumption of innocence and raises the presumption of guilt on appeal, *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), the appellant has the burden of illustrating why the evidence is insufficient to support the verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). A guilty verdict from the jury, approved by the trial court, accredits the testimony of the state's

---

**4.** Appellant subpoenaed Mario Lee. However, Lee refused to appear at trial. The court ruled that Lee was an unavailable witness and admitted the tape recording.

witnesses and resolves all conflicts in favor of the state. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978).

■ Appellant has not established that the evidence is insufficient. Although Walker testified that Philpott was with him, and the tape of Mario Lee's confession was played to the jury, the jury obviously discredited that evidence and believed the testimony of the state's witnesses. James Bowyer, one of the victims, positively identified Philpott as one of the robbers in a photo array. When stopped in Pigeon Forge, appellant was wearing the victim's wristwatch. Other stolen items were in the car. Resolving all conflicts in favor of the state, we find sufficient evidence in the record for a rational juror to conclude that appellant was guilty beyond a reasonable doubt.

## II. *Identification Issues* [5]

Appellant filed a motion to suppress the victims' identifications claiming the identification procedures were so impermissibly suggestive as to violate due process. At a pretrial hearing, the trial judge ruled that the procedures had not been impermissibly suggestive and that the identifications were admissible. At trial, the trial judge admitted into evidence in-court identifications by both victims as well as testimony about the identifications from the photo array.

Appellant contends that the trial judge erred by refusing to allow appellant to call prosecution witnesses at the pretrial suppression hearing. Appellant further argues that the identification testimony was admitted in violation of his due process rights.

We agree with appellant that the identification procedure used with witness Schudel was impermissibly suggestive and unreliable under the criteria set forth in *Neil v. Big-*

*gers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *See also Sloan v. State*, 584 S.W.2d 461 (Tenn.Crim.App.1978), *cert. denied*, (Tenn.1979). However, even if admission of the identification was error, we must evaluate the evidence under a harmless error analysis. *Gilbert v. California*, 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178 (1967). Under the circumstances of this case, the error, if any, was harmless beyond a reasonable doubt.

■ "Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photo identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). A pretrial confrontation procedure may be unlawful if it is unnecessarily suggestive and conducive to irreparable mistaken identification under the totality of the circumstances. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977).

Improper employment of photographs by police may cause errors in identification. Where the victim has only a brief glimpse of the culprit or if the viewing conditions are poor, there is danger that, even under the most correct procedures, there may be an incorrect identification. *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971. This danger is enhanced if the individual is in some way emphasized or if police indicate that there is other evidence that one person committed the crime. *Id.* A witness may thereafter retain the image of the person identified rather than the person actually seen substantially reducing the trustworthiness of subsequent identifications. *Id.*

■ The police followed correct procedures in putting together the photo array [6]

---

**5.** Appellants's issues 2, 3 and 4.

**6.** The photographic line-up itself was not impermissibly suggestive. The eight photographs picture young black males. The backgrounds are similar and in all but two, the photographs show

the suspects from the waist up. Seven of the men, including appellant, have mustaches. None of the men appear to have any other facial hair. Except for one young man who is dressed

and in presenting it to the two victims.[7] However, the totality of the circumstances dangerously tainted Schudel's identification. Steve Schudel was unable to describe the man who pushed him into the wall. He was unable to get a clear view of the robber and told the police that he would be unable to identify him. He knew only that the man was black and estimated that he was about 6'1″ in height.[8] He was able to make a positive identification of Chris McHoward as the gunman from the photo array. However, he selected appellant's picture only as "resembling" the other man.

Moreover, Schudel had the opportunity to see the appellant at the preliminary hearing. At the hearing, he observed Bowyer's identification of appellant as the second robber, and although he had been unable to make a positive identification or give a reasonable description of his assailant, he was asked to identify appellant in-court at that time.

 Even when pretrial identification procedures are found to be suggestive, out-of-court and in-court identifications may still be admissible. The inquiry is whether the identification was reliable even though the procedure was suggestive. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). It is the likelihood of misidentification that violates due process and renders the identification inadmissible. *Id.*

In *Biggers*, the Court listed the factors to be considered in determining whether the identification was too unreliable to be admitted into evidence:

1. the opportunity of the witness to view the criminal at the time of the crime;

2. the witness's degree of attention at the time of the crime;

3. the accuracy of the witness's prior description;

4. the level of certainty demonstrated at the confrontation;

in a military uniform, all are informally dressed in tee-shirts and light jackets.

**7.** The victims did not view the photographs together. Their identifications were completely separate.

5. the time elapsed between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382.

When these factors are applied to the circumstances in this case, it is clear that Steve Schudel's identification of appellant is tenuous. Since he was held from behind, Schudel had little opportunity to view the robber. His attention was focused on McHoward who held the gun and who was in plain sight. Schudel was unable to give an accurate description of the appellant saying only that he was black, male, and over six feet tall. When he viewed the photographs, he was unable to identify appellant with any degree of certainty. Then at the preliminary hearing he saw that appellant had been charged with the crime. There can be no doubt that thereafter he would retain the image of appellant as the perpetrator of the crime. Under the *Neil v. Biggers* standard, Schudel's identification was unreliable.

 If a court determines that a pretrial identification procedure was so impermissibly suggestive that it violated an accused's due process rights, both out-of-court and in-court identifications are automatically excluded. *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382; *Sloan*, 584 S.W.2d at 470. For the reasons stated above, we find that the procedures by which Schudel identified appellant violated his due process rights and that both his out-of-court and in-court identifications were unreliable. It was error to admit his identification testimony at trial.

 Bowyer's identification, on the other hand, was not subject to the same difficulties. He was able to see both men during the entire incident, gave a description of each, and never doubted his ability to identify the men. He positively identified both men from the photo line-up and never wavered in his identification of appellant as the second man. Under the *Biggers* factors listed above, his identification is reliable and was properly admitted at trial.

**8.** Appellant is 5'9″.

Although only an exclusionary rule is an effective remedy when a pretrial confrontation violates a defendant's sixth amendment or due process rights, such errors are subject to the harmless error analysis under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Gilbert v. California*, 388 U.S. at 273, 87 S.Ct. at 1957. Thus, a conviction will be reversed unless the appellate court is able to declare that the error was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

In this instance, although Schudel's identification is tainted, Bowyer's is not. Bowyer positively identified appellant and McHoward as the two men that robbed him and Schudel. In addition, a watch stolen from Bowyer and Schudel was found in appellant's possession, and other items taken in the robbery were in the car in which he was a passenger. Under these circumstances, the admission of Schudel's identification was harmless beyond a reasonable doubt.

Appellant also contends that Schudel and Bowyer should have been allowed to testify at the suppression hearing. The state argues that the witnesses were unnecessary since the only issue to be determined at the hearing was whether the photographic line-up was impermissibly suggestive.

The state oversimplifies the identification issue. As discussed above, the true question is not whether the actual line-up was impermissibly suggestive but whether the identification is reliable. *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382; *Proctor v. State*, 565 S.W.2d 909 (Tenn.Crim.App.), *cert. denied*, (Tenn.1978). To determine whether an identification violates due process, a trial court is required to examine the totality of the circumstances. *Stovall v. Denno*, 388 U.S. at 302, 87 S.Ct. at 1972. To apply the *Neil v. Biggers* factors, a court must examine more than the circumstances surrounding a photo array and should have access to all relevant facts. The police officer in charge of the line-up may not have those facts in his possession. The defendant has the burden of demonstrating that the identification procedures were impermissibly suggestive and must be able to call witnesses to testify to facts that tend to prove that "those procedures give rise to a very substantial likelihood of irreparable misidentification." *Id.* Denying a motion to suppress where defendant is not given full opportunity to present relevant evidence is error. *State v. Crabtree*, 655 S.W.2d 173, 179 (Tenn.Crim. App.1983).

However, it is clear that had the trial court heard the victims' testimony at the suppression hearing, the result would not have been different. Even had the trial court concluded that Schudel's identification was unreliable, Bowyer's identification was reliable and admissible. Appellant could have been convicted on the basis of Bowyer's identification and other evidence in the record. Thus, any error in excluding the witness' testimony was harmless.

### III. *Brady Violation* [9]

During the cross-examination of Steve Schudel, defense counsel discovered that the copy of Schudel's statement, provided by the district attorney general, was missing its second page. Although the second page contained less than a half page, appellant argues that the last three or four sentences were exculpatory. On the night of the robbery, Schudel wrote:

> I can't describe the taller guy.[10] I might be able to identify the shorter one. Nothing sticks out as unusual features. The entire event took 1–3 minutes.

On appeal, appellant contends that the state's failure to provide the defense with an exculpatory statement in response to its discovery and *Brady* motions is a violation of due process. The state argues that the statement is not exculpatory and, even if it were, the defense attorney learned of the statement in time to cross-examine the wit-

---

9. Appellant's issue number 5.

10. The "taller" assailant refers to the robber who pushed Schudel against the wall and held him

there throughout the incident. Bowyer estimated that this robber was about 6'1". McHoward and Philpott are both approximately 5'9".

ness, and the result of the trial was not affected by the violation.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court ruled that, upon request, the prosecution has a compelling duty to furnish the accused with any exculpatory evidence that pertains to the accused's guilt or innocence or the punishment which may be imposed. *Id.* at 87, 83 S.Ct. at 1196. Suppression by the prosecution of evidence favorable to an accused in light of a proper request violates due process if the evidence is material. *Id.; Branch v. State,* 469 S.W.2d 533 (Tenn.Crim.App.1969), *cert. denied,* (Tenn.1970).

Before a prosecutor is required under *Brady* to disclose evidence to the accused, the evidence must be material, it must be favorable to the accused, and, unless it is obviously exculpatory, the defendant must make a timely request for the evidence. *See United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Strouth v. State,* 755 S.W.2d 819, 828 (Tenn.Crim.App.1986), *perm. to appeal denied,* (Tenn.1987).

A prosecutor's duty to disclose is not limited to "competent" or "admissible" evidence. The duty includes all "favorable information" unknown to the accused. *Branch,* 469 S.W.2d at 536. The non-disclosure and suppression of information favorable or useful to an accused offends "those fundamental constitutional concepts of a fair trial so essential to due process of law." *Id.*

Identification of the robbers was the major issue in this case. Schudel's statement, given on the night of the robbery, was favorable to appellant and useful in preparing his case. Due process required that the statement be provided to appellant in response to his timely *Brady* motion. The state's failure to comply is not excused even though there is no showing of the prosecution's bad faith. *State v. Marshall,* 845

S.W.2d 228, 233 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1992).

However, to warrant a reversal, the evidence must be "material" in the constitutional sense, that is, it must create a reasonable doubt about appellant's guilt. *State v. Swanson,* 680 S.W.2d 487, 491 (Tenn.Crim. App.), *perm. to appeal denied,* (Tenn.1984). If the undisclosed evidence had been available and were used effectively, the judgment must be reversed if the use of that evidence might have made the difference between conviction and acquittal. *State v. Davis,* 823 S.W.2d 217, 218 (Tenn.Crim.App.1991). "Where there is no reasonable doubt about guilt whether or not the additional information is considered, a new trial is not justified." *Swanson,* 680 S.W.2d at 491.

Appellant contends that had he possessed the statement, it would have strengthened substantially the argument for suppressing Schudel's identification of appellant as the second robber. The statement, however, is merely corroborative of Schudel's written statement which he signed after viewing the photo array. Schudel wrote that he "was able to identify Chris McHoward as the person who held the gun on us." This statement, which was available to the defense, does not identify appellant. The earlier statement, in which Schudel disclaimed his ability to identify the second robber, would have contributed little to the defense argument.

Moreover, even if this tidbit had convinced the trial court to grant appellant's motion to suppress Schudel's identification, the result of the trial would not have been affected. The jury was aware of both statements and defense counsel was able to use both in his cross-examination of Schudel. As discussed above, there was sufficient evidence for a rational jury to convict without Schudel's identification.[11]

### IV. *Improper Impeachment of Alibi Witness* [12]

At trial Broderick Walker testified that appellant was with him at the time the

---

**11.** In addition, the second page was discovered in time to allow defense counsel to use it in his cross-examination of Schudel, and the entire statement was admitted into evidence.

**12.** Appellant's issues 6 and 7.

robbery took place. The prosecution attempted to discredit his testimony by asking him about a purported conviction for receiving and concealing stolen property. This question was clearly improper.

At trial, the prosecutor asked a series of questions about the stop in Pigeon Forge.[13] After the prosecution had asked several questions about the stop, counsel for the defense requested a bench conference. At this time, the state indicated its intent to ask about the "conviction." The trial court allowed the state to ask the question.[14] As a result, this exchange followed:

> Prosecutor: Mr. Walker, isn't it true that you were convicted of receiving and concealing stolen property in the Trial Justice Court of Sevier County?
>
> Witness: I was convicted of what?
>
> Prosecutor: Receiving and stealing.
>
> Witness: No, sir.
>
> Prosecutor: You were not convicted of that?
>
> Witness: I was convicted of unlawful trespassing. I was convicted of unlawful trespassing.
>
> Prosecutor: Unlawful trespass? So you don't know anything about all that property?

At this point, defense counsel objected. At a bench conference, the trial court asked for proof of the conviction. Since the prosecution was unable to present any proof beyond the N.C.I.C. print-out, the trial court held that further questioning on the substantive offense was inappropriate but allowed questioning on the stop itself and about the stolen property found in the car.

Walker was never convicted of receiving and concealing stolen property. Walker had been arrested in Pigeon Forge on a shoplifting charge. He pled guilty to a misdemeanor count of criminal trespass. Prior to trial, the trial court ruled that criminal trespass was not a crime involving dishonesty and held that it was not a basis for impeachment. Tenn.R.Evid. 609(a).

Despite this ruling, the prosecutor questioned Walker about his conviction. The state contends that it had a good-faith basis for asking the question since it had an FBI computer print-out showing the conviction.[15] However, N.C.I.C. print-outs have long been discounted as the source of accurate information. *State v. Buck*, 670 S.W.2d 600, 607 (Tenn.1984). In *Buck*, the Tennessee Supreme Court stated that the print-outs are not admissible in court to prove a conviction nor for any other purpose because "the information in such reports is pure hearsay, of a dubious degree of accuracy, prepared for purposes other than court use...." *Id.* An F.B.I. print-out does not provide a good-faith basis for impeachment of a crucial defense witness when the trial court had previously held that the witness's only conviction, a misdemeanor of criminal trespass, was inadmissible.[16]

 If the state wished to introduce the evidence as pertaining to Walker's reputation for truthfulness under Rule 608 of the Tennessee Rules of Evidence, based on its good-faith belief that Walker had been convicted of receiving stolen property, the procedures outlined in paragraph (b)(1) of that rule should have been followed. Where the prosecution wishes to cross-examine a witness about *conduct* probative solely of truth-

---

**13.** At one point the prosecutor said: "Okay. So you and he were arrested together on March the 19th, 1989, at approximately 6:45 in Pigeon Forge, is that right?" Defense counsel, however, did not object at this point.

**14.** The trial court made no finding that the probative value of the evidence outweighed its prejudicial effect. Tenn.R.Evid. 608(b); *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976). Nor did the trial court find that there was a reasonable factual basis for the inquiry as required by Rule 608(b)(1).

**15.** It should be noted that the state fails to cite any authority in support of its position that the

print-out is a sufficient good-faith basis for its cross-examination.

**16.** The trial court's ruling was completely correct. Tennessee Rules of Evidence 609 permits the use of a conviction for a misdemeanor to attack the credibility of a witness where "the crime must have involved dishonesty or false statement." Tenn.R.Evid. 609(a)(2). Criminal trespass is not a crime involving dishonesty or false statement. *State of Tennessee v. Tommy Lee Hill, Jr.*, No. 02C01–9212–CC–00285, 1993 WL 492698 (Tenn.Crim.App., Jackson, Dec. 1, 1993).

fulness or untruthfulness, the trial court must upon request "hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry." Tenn.R.Evid. 608(b)(1). While the rule is not clear as to who must request the hearing, the party seeking the use of a criminal conviction to impeach must request a jury-out hearing to determine its admissibility. *State v. Davis*, 741 S.W.2d 120, 123 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1987). The purpose of the hearing is to eliminate the possibility that the jury will hear the question and its response before a judge has the opportunity to rule. Neil P. Cohen, Donald F. Paine, Sarah Y. Sheppeard, *Tennessee Law of Evidence*, § 608.3, at 265 (2d ed. 1990). Moreover, where a party inquires about specific instances of conduct on cross-examination, "the witness should be asked about the act itself, not about rumors, arrests, charges or indictments for the act." *Id.* at 267.

The state requested no hearing to determine the admissibility of the alleged conviction. At the hearing on the admissibility of the criminal trespass conviction, the district attorney general never mentioned any conviction for receiving stolen property and never requested to question Walker about that offense. The question about this non-existent conviction for receiving stolen property was highly improper.

■ As framed, the questions regarding the alleged conviction imparted to the jury prejudicial and incompetent information which the jury would ordinarily believe to be within the knowledge of the State. *See State v. Hicks*, 618 S.W.2d 510, 519 (Tenn.Crim. App.1981). An attempt to communicate by innuendo through questions which are answered in the negative is impermissible when the questioner has no evidence to support the question. *State v. Bowling*, 649 S.W.2d 281, 283 (Tenn.Crim.App.1983). It is unprofessional conduct to ask a question which implies the existence of a factual predicate

which the examiner cannot support by evidence. ABA Standards Relating to the Prosecution Function, Approved Draft, 1971, § 5.7(d).

The district attorney general's failure to follow procedures established by Tennessee Rules of Evidence 608 and 609 is inexcusable. His persistence in disobeying the trial court's order not to comment on the conviction for criminal trespass jeopardized the results in this trial.

■ Defense counsel, however, did not request that the trial court declare a mistrial nor did he seek a curative instruction from the trial court when his objection was sustained. A party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of an error is not entitled to relief under our rules. Tenn. R.App.P. 36(a). We admonish the prosecutor for his precarious conduct but decline to grant relief in light of all the circumstances present.

### V. *Admissibility of Tapes* [17]

At a pretrial hearing, the trial court held that Mario Lee was an unavailable witness and that the tape recording of his conversation with attorney Steven Oberman [18] was admissible at trial. In rebuttal, the state was permitted to play for the jury a recording of a telephone conversation between Mario Lee and Jim Norris, an investigator for the district attorney's office. The conversation with Oberman took place on July 24, 1990. The conversation between Lee and Norris took place the day before the trial.

In the Oberman tape, Lee confessed not only to the robbery that took place on March 18, 1990 but to an earlier robbery as well.[19] In the Norris tape, Lee denied participating in either robbery and stated that either he had never made any statement in which he confessed to the robberies or that if he did make a statement he could not remember what he had said.

---

17. Appellant's issues 8 and 9.

18. Oberman originally represented appellant in this matter. His testimony at trial laid the foundation for the admissibility of the tape.

19. The earlier robbery occurred on March 2, 1990. Chris McHoward and appellant were indicted for this robbery as well.

At the time of trial, Lee was in Birmingham, Alabama, and appellant had attempted to secure his attendance at trial by issuing several subpoenas. The defense requested and received one continuance when Lee failed to show up at a prior date for trial. Appellant requested an order to pay Mario Lee, which was granted by the court. A check to cover expenses was served on Lee along with a subpoena. Lee, however, refused to accept the check and refused to comply with the subpoena. On the day before the trial the investigator tried to persuade Lee to come to Knoxville the next day.[20] Based on these facts, the trial court ruled that both the defense and the prosecution had made a sufficient good-faith effort to procure Lee's attendance at trial and that Lee was, therefore, an unavailable witness.

Appellant raises two issues on appeal. First, appellant contends that it was error to admit the Oberman tape and its transcript in its entirety because Lee confessed not only to the March 18th robbery which was the subject of the trial, but also to the March 2nd robbery. By implication, the defense argues, the jury was lead to believe that appellant was guilty of both crimes as well. We disagree.

The state contends that the defense has waived this issue because, although counsel argued against the admission of the entire tape in the pretrial hearing, no contemporaneous objection was made at trial to the admission of the transcript and tape. Indeed, defense counsel moved the admission of both. Pursuant to Tennessee Rules of Appellate Procedure 36(a), a party who is responsible for an error is not entitled to relief on appeal.

■ Even if it were error to admit the tape in its entirety, and even if the issue were properly presented on appeal, the error was harmless in this instance. This case is readily distinguishable from *State v. Bowling* where a tape-recorded statement by the defendant suggested by innuendo that he was guilty of many other crimes not charged. *State v. Bowling*, 649 S.W.2d 281, 283 (Tenn. Crim.App.1983). In *Bowling*, the tape contained references to unnamed informants and was filled with inadmissible hearsay. *Id.* The tape was highly prejudicial because it directly implicated the defendant in other crimes.

The facts in this case are quite different. Although Lee confessed to the March 2nd robbery in the Oberman tape, he made no statements that implicated appellant in the commission of that crime either directly or by innuendo.[21] Lee described his own participation in two crimes which he committed with Chris McHoward. His subsequent denial of guilt does not lead inexorably to the conclusion that appellant committed not only the crime charged but the other one as well.[22] Appellant was not necessarily a participant in every crime that Lee denied committing. After listening to the tape and carefully reviewing the record, it is clear that there is nothing in the record that would lead the jury to conclude that appellant was involved in both robberies included in Lee's original confession. In this instance, the incidental reference in the tape recording to the earlier robbery is harmless beyond a reasonable doubt.

■ Appellant's second issue involves the admissibility of the Norris tape. Appellant contends that the state failed to satisfy the two-pronged test set forth in *State v. Henderson*, 554 S.W.2d 117, 119 (Tenn.1977) and *State v. Armes*, 607 S.W.2d 234, 237 (Tenn.1980), for determining the admissibility of evidence that would normally infringe

**20.** There is no indication that the prosecution offered immunity to Lee if he agreed to testify in person at the trial.

**21.** At one point Oberman asked: "The reason you are telling me this today is to let the authorities know that Mr. Philpott was not involved in either of these two robberies with which he is charged?"

At best, this statement is ambiguous. In this case, Philpott was charged and tried for two counts of robbery—one for each victim. There is no reason to conclude that the jury assumed that this meant appellant had been charged with the March 2nd robbery as well as the one at bar.

**22.** The Norris tape makes it clear that Mario Lee was a participant in a number of crimes in Alabama. He mentioned his probation officer and a trial that was forthcoming in Birmingham.

on defendant's confrontation rights.[23] *Armes* requires that the state show that the hearsay testimony is necessary in that the witness is unavailable and the state has made a good faith effort to produce the witness in person at trial.

We find that *Armes* and *Henderson* are inapplicable in this instance. Those cases involve direct evidence presented by the state as part of its case-in-chief. In this instance, the Norris tape was offered to rebut Lee's statement and not as substantive evidence and was properly admitted as impeachment testimony. *Tennessee v. Street,* 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

A witness's prior inconsistent statement may be used to impeach the witness. Our rules of evidence have retained the traditional rule. Neil P. Cohen, Donald F. Paine, Sarah Y. Sheppeard, *Tennessee Law of Evidence,* § 613.1, at 312 (2d ed. 1990). Hearsay declarants are subject to impeachment to the same extent as trial witnesses. Tenn.R.Evid. 806, Advisory Comm. Comment. However, Rule 806 dispenses with the requirement that the declarant have an opportunity to explain when impeachment is by prior inconsistent statement. *Id.*

The difficulty here is that the "prior inconsistent statement" was made *after* the hearsay which it is used to impeach. At first glance, the situation presents a paradox. A statement made after an earlier statement cannot be a *prior* inconsistent statement with respect to the first statement.

It is, however, the *use* of the hearsay statement at trial that is at issue. Had the declarant testified in person at trial, a contradictory statement made the night before trial would be a prior inconsistent statement admissible even if the witness had made an earlier statement that conformed to his trial testimony.[24] The Oberman tape was used as a substitute for the actual testimony of Mario Lee, an unavailable witness. Lee's statement to Norris was made prior to the use of that statement at trial and was properly admitted as a prior inconsistent statement to impeach the in-court use of Lee's earlier statement.

Appellant also argues that the conversation between Norris and Lee possesses no indicia of reliability by which it can be determined that the declarant was actually Mario Lee since the two had not met or spoken before the call. Even though as impeachment the out-of-court statement is not hearsay, its reliability is still a matter of some concern. In this instance, the jury heard both tapes and was able to make its own independent judgment as to the identity of the speakers. The jury may have concluded that the same individual was speaking on both tapes. On the other hand, the jury may have accepted Lee as the speaker on only one of the tapes or disregarded both tapes as being too unreliable. Both Oberman and Norris were subject to cross-examination in the jury's presence. This court will not speculate concerning the weight the jury assigned to each tape.

For the reasons stated above, we conclude that the Norris tape was properly admitted as a prior inconsistent statement for impeachment purposes under Rules 613 and 806 of the Tennessee Rules of Evidence.

## VI. *Prosecutor's Closing Argument* [25]

■■■ Finally, appellant alleges that prosecutorial misconduct during the closing argument and the trial court's denial of appellant's efforts to refute that argument resulted in prejudice requiring reversal of his con-

---

23. The *Henderson* rule requires that at least three criteria must be met to satisfy federal constitutional confrontation rights:
 1. by implication, the evidence must not be crucial or devastating;
 2. the state must make a good-faith effort to secure the presence of the declarant;
 3. the evidence must bear its own indicia of reliability if offered under an exception to the hearsay rule.
 554 S.W.2d at 119–120.

24. Support for this reasoning is found in *Tennessee Law of Evidence* which states "[i]t should be noted that the inconsistent statement used to impeach a hearsay declarant will often have been made *after* the hearsay statement was made." Neil P. Cohen, Donald F. Paine, Sarah Y. Sheppeard, *Tennessee Law of Evidence,* § 8.1, at 469 n. 257 (2d ed. 1990) (emphasis in the original).

25. Appellant's issues 10, 11, and 12.

viction. Although the prosecutor again disregarded the ruling of the trial court and made a grossly improper argument, we find that the trial judge's prompt curative instruction was sufficient to dispel any prejudice that may have resulted from this error.

At the pretrial hearing, the trial judge found that the defense had done everything possible to obtain Mario Lee's presence at trial and ruled that Lee was an unavailable witness. After the tape was played, the court offered to describe to the jury the attempts both sides had made to get Lee to trial. The state objected to this explanation.

During his final summation, the prosecutor alluded to the fact that Lee was not present for the trial. He said:

How did Mario Lee not get up here? Who tried to get him up here? You heard the tape. The State tried to get him up here. Had Mr. Smith tried to—

At that point, defense counsel objected. The trial court stated that both parties had made efforts to get Lee to trial and that it was inappropriate to claim that the defense had not.

Later, the prosecutor continued in the same vein:

Because, once Mario Lee walks into this courtroom, and you see him, all their story goes out the window. They can only present their story if he is not here, because they can put on the respectable counsel to come in and say, "Yes, I interviewed him, and here is what he told me." "Was he under oath?" "No."

When the prosecutor's summation had ended, defense counsel requested that the subpoenas be published to the jury in order to refute the assistant district attorney's allegations. The trial court denied that motion but immediately gave the following curative instruction:

Okay. I am going to clear that up. We are not going to introduce that document.

I am going to tell the jury that both the State of Tennessee, as you heard on this tape, attempted to compel the attendance of Mr. Lee, and that the defense went through all—the Court finds that the defense went through all of the legal requirements necessary to compel his attendance, and he did not appear at trial at the request of either one.

▮▮▮▮ Without a doubt, the prosecutor's comments on the absence of Mario Lee were highly improper.[26] It is well-established in Tennessee that a party may comment upon the failure to call an available and material witness whose testimony would ordinarily be expected to favor the party. *State v. Francis*, 669 S.W.2d 85 (Tenn.1984). If a party has, within its power, the ability to produce a witness whose testimony would be material to an issue; the fact that the party does not do so allows a permissive inference that the testimony, if produced, would be unfavorable to the party. *See State v. Francis*, 669 S.W.2d 85, 88 (Tenn.1984).

In *Delk v. State*, the Tennessee Supreme Court held that a party may comment about an absent witness when the evidence shows that "[1] the witness had knowledge of material facts, [2] that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and [3] that the missing witness was available to the process of the Court for trial." *Delk v. State*, 590 S.W.2d 435, 440 (Tenn.1979). "[T]he *Delk* requirements ... are to be strictly construed, particularly when the rights of a criminal defendant may be affected." *State v. Francis*, 669 S.W.2d 85, 89 (Tenn.1984).[27]

To draw a permissible inference based on the absence of a witness, the party must have had the power to produce that witness. In this instance, the third *Delk* requirement cannot be met. Mario Lee was not within the subpoena power of the trial court. The trial judge ruled that Mario Lee was an

---

**26.** The state concedes as much in its brief and argues only that the misconduct did not affect the verdict.

**27.** It should be noted that when an attorney intends to argue the missing witness inference, Tennessee law requires that the trial judge be

notified at the earliest opportunity so that the court may hold an evidentiary hearing, if necessary, to determine whether the *Delk* requirements have been met. *State v. Francis*, 669 S.W.2d 85, 90 (Tenn.1984).

unavailable witness after hearing the arguments of both the state and the defense.

■ It is unprofessional conduct for a prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw. *State v. Hicks*, 618 S.W.2d 510, 519 (Tenn.Crim.App.1981). The prosecutor in this case certainly was aware of the trial court's ruling on unavailability. His remarks to the jury concerning the absence of Mario Lee indicate a lack of good faith and an unprincipled determination to make his case whatever the cost. While it must be remembered that the prosecutor is an advocate, and is entitled to pursue his role with thoroughness and vigor, the role of prosecutor is

> not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

Although we have concluded that the prosecutor's remarks constituted error, we must determine whether that error prejudiced the defendant. This court has set out five factors which must be considered in making the determination whether a prosecutor's improper conduct could have affected the verdict to the prejudice of the defendant. These factors are as follows:

1. the conduct complained of in light of the facts and circumstances of the case;
2. the curative measures undertaken;
3. the intent of the prosecutor in making the improper remarks;
4. the cumulative effect of the improper conduct and any other errors in the record;
5. the relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim.App.1976).

■ In this instance, the trial judge, upon the objection of defense counsel, issued a corrective statement to the jury making it clear that the defense had done everything required to bring Lee to trial as a witness. The prompt instruction of a trial judge generally cures any error unless the error is so prejudicial that it is more probable than not that it affected the judgment. *State v. Tyler*, 598 S.W.2d 798, 802 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1980).[28]

We do not condone in any fashion the improper manner in which the prosecutor addressed the jury and his blatant disregard for the facts. Trial judges are encouraged to take the necessary steps to harness undisciplined, blatant transgressions by counsel who appear before them. Despite these errors, we do not believe that the prosecutor's inappropriate conduct requires a reversal. In light of the immediate curative instruction of the trial court, the remarks could not have affected the verdict. While identification was a major issue in the case, Bowyer's strong, positive, and consistent identification of the appellant was unshaken. As for the chance that the victim had confused the appellant with Lee, a picture of Mario Lee was entered into evidence. The jury was able to determine for itself whether Mario Lee resembled appellant sufficiently to cast serious doubt on Bowyer's identification.

### Conclusion

Appellant contends that the cumulative effect of the errors in this record denied him a

---

**28.** We agree with the state that in light of the curative instruction immediately issued by the trial court, it was unnecessary for the defendant to display the subpoena issued for Lee to the jury. On the Norris tape, Lee himself admitted that he had received a subpoena. Only upon showing an abuse of discretion will a court's refusal to allow additional proof be overturned. *State v. Baker*, 785 S.W.2d 132, 134 (Tenn.Crim. App.1989), *perm. to appeal denied*, (Tenn.1990). The appellant has not demonstrated that an abuse of discretion occurred in this instance.

fair trial. We disagree. Although there were a number of errors, most of them were created by prosecutorial overreaching. None of the errors affected the substantive proof which remained unshaken throughout the trial. Appellant was positively identified by the victim as one of the robbers. He was caught with the stolen goods in his possession. The jury, as the trier of fact, accredited the testimony of James Bowyer and chose not to believe the testimony of appellant and his alibi witness. We, as an appellate court, cannot substitute our judgment for that of the jury. The judgment of the trial court is affirmed.

WADE and SUMMERS, JJ., concur.