# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. RETHA JEAN SMITH

**Direct Appeal from the Criminal Court for Henry County**
**No. 12853    Julian P. Guinn, Judge**

---

**No. W1999-00607-CCA-R3-CD - Decided - September 14, 2000**

---

The defendant appeals her jury conviction and sentence for possession of a Schedule II controlled substance with the intent to manufacture, sell or deliver. She received a sentence of three years with one year to be served in confinement and the remainder to be served on community corrections. The defendant raises the following issues for review: (1) whether the evidence is insufficient to sustain her conviction; (2) whether the prosecuting attorney made improper remarks during his closing argument; and (3) whether her sentence is excessive. Upon a review of the record, we affirm the judgment of the trial court but remand for the assessment of the fine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed; Remanded for Assessment of Fine.**

RILEY, J. delivered the opinion of the court, in which TIPTON and GLENN, JJ. joined.

Steven L. West, McKenzie, Tennessee, for the appellant.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Officers arrived at the defendant's residence to execute an arrest warrant on Gary Osborne. Officer Archie approached the back porch, detected an ammonia-type smell, observed two mason jars with a white powder substance on the bottom and chemicals on top, and saw a bottle of liquid fire and a jar of ether. Thereafter, the defendant appeared on the porch. The officers advised her they were looking for Osborne, and she stated he was not in the house. The defendant then advised the officers that they were "more than welcome to look" in the residence.

Two officers testified that they smelled a strong chemical odor throughout the house. Starter fluid and lithium batteries were observed in the living room, and there was a razor blade and white residue on the corner of the kitchen table. In addition, Officer Archie searched the defendant's bedroom and found a measuring cup with some burnt chemical residue, several boxes of

pseudoephedrine on the night stand, a box of rolling papers on the bed, and a plate with a residue of methamphetamine. A search of the bathroom revealed a plate containing small bags of methamphetamine, lines of white powder, two razor blades, and a pen which appeared to have been used as a straw. There was a Pyrex bowl of anhydrous ammonia in the bathtub.

Narcotics Officer Wyrick explained that the items found were used in running a "Nazi style" methamphetamine lab. He testified that this type of lab is established by using household products. He stated that officers observed all the products which were needed for this kind of operation, and the smell of a chemical odor indicated the operation was ongoing. He explained that the mason jars found on the back porch and in the bathroom were "cooking." This refers to the process of chemically extracting the compound ephedrine, which is the primary ingredient of methamphetamine. Wyrick further explained that this process would take approximately four to eight hours.

Co-defendant Jeremy Freeland testified that he produced the methamphetamine for his personal use, and the defendant had no knowledge that the drug was being manufactured. The defendant testified the residence was not her home. She stated she was there only the one night and had no knowledge of the drug operation. However, the defendant identified the property as her home to the officers; a utility receipt listed the defendant as the owner of the property; and a receipt from a local drug store showed the defendant purchased four bottles of rubbing alcohol and several boxes of pseudoephedrine tablets the day before the search.

The jury convicted the defendant of possession of methamphetamine with the intent to manufacture, sell or deliver and assessed a fine of $50,000. The defendant received a sentence of three years with one year to be served in confinement and the remainder on community corrections.

In this appeal as of right, the defendant contends the evidence is insufficient to support her conviction; the prosecutor made improper remarks in his closing argument; and her sentence is excessive. We reject these contentions and affirm the judgment of the trial court; however, we remand for the assessment of the appropriate fine.


## I. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom

are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## B.  Analysis

The defendant contends the state did not prove she was aware that methamphetamine was being produced in the residence, or that she was involved in the manufacture of methamphetamine. She further argues the proof does not reveal that methamphetamine was produced other than for Freeland's personal use.

Viewing the evidence in the light most favorable to the state, we conclude the evidence is sufficient to support the defendant's conviction. Officer Wyrick described the lab and testified that, based on his experience as a narcotics officer, the lab was an ongoing operation. All three officers testified that the smell of chemical odor was extremely pungent. In addition, a measuring cup with a burnt chemical residue, a plate with methamphetamine residue, and several boxes of pseudoephedrine tablets were found in the bedroom where the defendant was sleeping. Furthermore, the defendant had recently purchased several bottles of rubbing alcohol and boxes of pseudoephedrine tablets, which are key ingredients in methamphetamine. Although the defendant testified this was not her residence, the officers presented contrary evidence. Furthermore, the nature of the drug operation and the presence of small bags of drugs indicated the drugs were not strictly for personal use.

The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier of fact. Brewer, 932 S.W.2d at 19. Thus, the jury was free to discount the defendant's explanation if they found her testimony was not credible. Likewise, the jury could assess the credibility of co-defendant, Jeremy Freeland.

There was sufficient evidence to convict the defendant of possession with intent to manufacture, sell or deliver methamphetamine. This issue is without merit.

## II.  CLOSING ARGUMENT

### A.  Standard of Review

"It is unprofessional conduct for a prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." State v. Philpott, 882 S.W.2d 394, 408 (Tenn. Crim. App. 1994); *see also* State v. Hicks, 618 S.W.2d 510, 518 (Tenn. Crim. App. 1981). It is as much his or her duty to refrain from improper methods calculated to produce a wrongful conviction

as it is to use every legitimate means to bring about a just one. <u>Berger v. United States</u>, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed.1314 (1935).

## B. Analysis

The defendant contends the district attorney inappropriately argued the jury should "send a message" to the community since juveniles were involved in the drug operation. The defendant alleges that the only juvenile at the house was her fourteen-year-old son.

First, we note that there is no indication in the record that the district attorney stated or implied the jury should "send a message" to the community regarding juveniles and drug activity. Furthermore, the defendant's objection to the state's characterization of the other persons in the house as juveniles was sustained by the trial court, and the jury was instructed to ignore counsel's statement. Thus, the trial court gave a prompt and proper instruction which was sufficient to nullify any prejudicial effect. *See* <u>Philpott</u>, 882 S.W.2d at 408. This issue is without merit.

## III. SENTENCING

The defendant contends that her sentence is "excessive and unduly harsh." Her sole argument is that her co-defendant, Jeremy Freeland, was more culpable, yet received a less severe sentence.

The defendant contends that Freeland was sentenced to three years, with 210 days to be served in confinement and the balance to be served on community corrections. However, his sentence does not appear in the record except through statements of counsel. Nevertheless, we see no reason to disturb the defendant's sentence.

The trial court is not required to give co-defendants the same sentence. <u>State v. Michael Leon Chambers</u>, C.C.A. No. 01C01-9505-CC-00143, Putnam County (Tenn. Crim. App. filed June 20, 1996, at Nashville), *perm. to app. denied* (Tenn. 1996). We do note that Freeland pled guilty, and the record does not indicate whether his sentence was negotiated pursuant to that plea. Nor does the record contain the findings of the trial court that sentenced Freeland, or the proof which was presented at his sentencing hearing. The defendant's pre-sentence report does not contain Freeland's sentence but does reveal that Freeland was only twenty-two years of age, whereas defendant was thirty-five. Each case rests upon its own merits, and we need not look to other cases where the trial court has properly considered the sentencing principles applicable to the defendant. *See* <u>State v. Johnny Wayne Tillery</u>, C.C.A. No. 01C01-9506-CC-00182, Giles County (Tenn. Crim. App. filed March 30, 1998, at Nashville), *perm. to app. denied* (Tenn. 1998). Thus, the defendant has not established any unjustified disparity in her sentence.

## IV. FINE

Although not raised by the parties, we note the case must be remanded for entry of the amount of the fine. The jury set the defendant's fine in the amount of $50,000. The trial court confirmed this fine at sentencing; however, the judgment does not contain the amount of the fine. Defendant filed a motion to reduce the fine which was heard at the motion for new trial. The assessment of the fine was "stayed, pending further action of the [trial] court." The trial judge indicated he would "consider it at a later date." Nothing further appears in the record concerning the fine.

We, therefore, remand to the trial court to determine the amount of the appropriate fine pursuant to Tenn. Code Ann. § 40-35-301(b).

## **CONCLUSION**

Upon a thorough review of the record, we affirm the judgment of the trial court but remand for entry of an appropriate fine.