# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
May 2000 Session

## STATE OF TENNESSEE v. JERRY WAYNE SOUTHERLAND

**Direct Appeal from the Circuit Court for Obion County**
**No. 8046    William B. Acree, Jr., Judge**

---

**No. W1999-01083-CCA-R3-CD - Decided September 21, 2000**

---

The Defendant, Jerry Wayne Southerland, was found guilty by an Obion County jury of aggravated burglary and theft. In this appeal, the Defendant challenges the trial court's decision to allow the in-court identification of the Defendant by witness Brian Stacks. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR, JJ., joined.

C. Michael Robbins, Memphis, Tennesseee, John Palmer, Dyersburg, Tennessee, and Joseph P. Atnip, District Public Defender, Dresden, Tennessee for the appellant, Jerry Wayne Southerland.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Peter Coughlan, Assistant Attorney General, Thomas A. Thomas, District Attorney General and James David Kendall, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

On December 13, 1997, Don Stacks and his wife left their home in Obion County to go to Paducah, Kentucky. The Stacks' fourteen-year-old son, Brian Stacks (hereinafter "Stacks"), was supposed to be staying at his older sister's house while his parents were out of town. However, Stacks went home on the afternoon of December 13, 1997 to take a shower. At the Defendant's trial, Stacks testified concerning the events that took place while he was home that afternoon.

According to Stacks, around three o'clock in the afternoon on December 13, 1997, David Jones parked his truck in Stacks' driveway and knocked on the front door. Because Stacks was supposed to be at his sister's house, he did not answer the door. Jones left, and a few minutes later, the phone rang. Although Stacks did not answer the phone, he was able to determine by using "star-69" that the call came from a nearby gas station. After the call, Jones returned, and this time Stacks saw that Robbie Powers and the Defendant, Jerry Wayne Southerland, were also in the truck. The

three men got out of the truck and knocked on the front door. There was no answer, so the men went around to the back of the house. After knocking on the back door, the three men entered the Stacks' home through the back entrance. Once inside, Jones pointed out the location of the guns. Stacks saw what was happening and began to yell. The Defendant quickly grabbed two guns, and all three men left.

After the burglary, Stacks ran next door, and his neighbor called the police. Stacks testified that he believed that he had told the police the names of all the men involved in the burglary. However, the notes taken by Officer Royce Aker after talking to Stacks immediately after the burglary do not indicate that Stacks named the Defendant as one of the three burglars. According to the notes, Stacks did name David Jones and described two other men.

On December 23, 1997, just ten days after the burglary, Stacks was present at a hearing for David Jones and identified the Defendant to Jerry Vasbinder, a criminal investigator and Chief Deputy for Obion County. At the time of the identification, the Defendant was sitting in a crowded courtroom. Then, approximately one week before the Defendant's trial, Stacks was in the District Attorney's office and saw a photograph of the Defendant. Stacks again identified the Defendant as one of the criminals involved in the burglary.

The Defendant argues that Brian Stack's testimony, including both the in-court and out-of-court identifications, should be excluded from the record because the viewing of the Defendant's photograph on the District Attorney's desk was highly suggestive and prejudicial. Aside from the co-defendants in this case, Stacks was the only material witness to testify as to the identification of the Defendant. Stacks' identification testimony is essential to this case because a criminal defendant cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Caldwell, 977 S.W.2d 110, 115 (Tenn. Crim. App. 1997); Sherrill v. State, 321 S.W.2d 811, 814 (Tenn. 1959). This Court concludes that Brian Stacks' testimony, including his in-court identification of the Defendant, was properly admitted by the trial court. Therefore the testimony of the co-defendants was adequately corroborated, and the evidence at trial was sufficient beyond a reasonable doubt to convict the Defendant.

A pre-trial identification violates due process when it is so suggestive that it gives rise to "'a very substantial likelihood of irreparable misidentification.'" State v. Strickland, 885 S.W.2d 85, 88 (Tenn. Crim. App. 1993) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). As such, the focus of the inquiry is the reliability of the identification rather than the suggestive nature of the procedure. State v. Philpott, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Out-of-court and in-court identifications may still be admissible even when pre-trial identification procedures are found to be suggestive. Id. at 400. In determining the effect the procedure had on the reliability of the identification, each case must be considered on its own facts. Simmons, 390 U.S. at 384.

The United States Supreme Court has set forth a five-factor analysis for determining whether a suggestive identification may be admitted into evidence:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention [at the time of the crime], [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200 (1972); see also Philpott, 882 S.W.2d at 400. "The degree of reliability of the identification, as indicated by these factors, should be assessed in light of the suggestiveness of the identification procedure and the totality of the circumstances to determine whether a violation of due process has occurred." Strickland, 885 S.W.2d at 88. Due process is violated where the suggestiveness of the identification process creates the likelihood of misidentification. Neil, 409 U.S. at 198.

Regarding the reliability of the identification in this case, Stacks had ample opportunity to view the offender during the burglary. Stacks testified that he was in the house for the duration of the burglary and that his attention was focused on the criminals the entire time. In fact, it was only when Stacks began to scream that the offenders left the house. At trial, Stacks adamantly maintained that the Defendant was one of the persons involved in the burglary. Stacks testified that he had known the Defendant for approximately six months prior to the burglary. Thus, the only factor that weighs against the reliability of the identification is the accuracy of Stacks' prior description of the criminals, specifically the description he gave officers immediately after the crime. According to the investigating officer, Stacks never mentioned the Defendant by name or description when questioned on the night of the burglary. Stacks thought he had named the Defendant along with David Jones and Robbie Powers. However, considering the short duration of the interview, as well as the age and emotional state of the young witness, it is understandable why Stacks may have failed to name the Defendant. Stacks has always maintained that there were three men involved in the burglary and has never given a contradictory description of the Defendant.

After a careful review of the record, we conclude that no substantial likelihood of irreparable misidentification occurred in this case. Stacks' in-court identification of the Defendant was not the result of a suggestive pre-trial identification procedure and therefore was sufficiently reliable. Accordingly, the judgment of the trial court is AFFIRMED.

_____

ROBERT W. WEDEMEYER, JUDGE