IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 12, 2002 Session

## STATE OF TENNESSEE v. JUDY JOHNSON and STANLEY JOHNSON

**Appeal from the Circuit Court for Gibson County**
**No. 6803     George R. Ellis, Chancellor**

---

**No. W2001-01272-CCA-R3-CD  - Filed June 26, 2002**

---

GARY R. WADE, P.J., concurring.

While I concur in the result reached by the majority, I disagree on three points.  First, it is my view that the trial court erred by permitting the state to cross-examine Stanley Johnson on a 1993 animal cruelty charge that did not result in a conviction.  Tennessee Rule of Evidence 608 permits limited use of character evidence for impeachment purposes.  Rule 608 provides in pertinent part as follows:

> Specific Instances of Conduct.  Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crimes as provided in Rule 609, may not be proved by extrinsic evidence.  They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified.  The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:
> (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;
> (2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, . . . ; and
> (3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.  The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused.  If the court makes a final determination that such proof is admissible for impeachment purposes, the accused

need not actually testify at the trial to later challenge the propriety of the determination. . . .

Tenn. R. Evid. 608(b) (emphasis added).

Here, the state failed to provide notice, as required by the rule, of its intention to cross-examine Stanley Johnson regarding the 1993 animal cruelty charge. The pre-trial notice filed by the state, which the state now concedes was "defect[ive]," expressed an intent to impeach only Judy Johnson with a 1990 embezzlement conviction. Stanley Johnson had already testified on direct examination and the state was near the end of its cross-examination before the issue of the 1993 charge was presented. At that point, the trial court held a bench conference and permitted the questioning. Judy Johnson, perhaps because of her prior convictions, elected not to testify at trial. Had Stanley Johnson had proper notice of the state's intent to cross-examine on the 1993 charge, he may have made a similar election. More importantly, however, while the events underlying the charge may ultimately have been admissible, the charge itself was not. See State v. Morgan, 541 S.W.2d 385, 389 (Tenn. 1976); State v. Philpott, 882 S.W.2d 394, 403 (Tenn. Crim. App. 1994); Moore v. State, 563 S.W.2d 215, 218 (Tenn. Crim. App. 1977). A witness being cross-examined as to a specific instance of conduct under Tennessee Rule of Evidence 608 "should be asked about the act itself, not about rumors, arrests, charges or indictments for the act." Neil P. Cohen et al., Tennessee Law of Evidence § 6.08[4] (4th ed. 2000). To the state's credit, the assistant district attorney referred to prior "problems" in his cross-examination and instructed Stanley Johnson that he was not inquiring about "charges." Nevertheless, Johnson, in his response to the questions, made multiple references to the criminal charge, inadvertently placing inadmissible, highly prejudicial information before the jury.

It is my conclusion, however, that the trial court's error in permitting the cross-examination was harmless. See Tenn. R. App. P. 36(b); State v. Edwards, 868 S.W.2d 682 (Tenn. Crim. App. 1993). First, the jury had already heard evidence of other complaints against the defendants when investigator Don Curry read the affidavit in support of the search warrant. Second, the evidence of guilt was substantial. The living conditions of the dogs are documented by photographic and videotape evidence. A veterinarian and the Dyersburg Humane Society supervisor described in some detail the unsanitary state of the defendants' kennel and the poor quality of the care provided to the animals. The defense was not that the conditions in the kennel were acceptable, but that they were the unintentional result of Judy Johnson's surgery and poor physical health. The animal cruelty statute, however, does not require intentional conduct. The statute is satisfied when a person "knowingly . . . [f]ails unreasonably to provide necessary food, water, care or shelter for an animal in the person's custody." Tenn. Code Ann. § 39-14-202(a)(2). Evidence that the dogs were not receiving necessary food, water, and care and that the defendants had knowledge of the situation was overwhelming.

I also depart from the majority with regard to certain of the sentencing considerations. The defendants complain that the trial court erroneously admitted approximately 500 letters from persons with only secondhand knowledge of the case. The letters originated from across the United States

and their authors appear to have gained information about the prosecution from the internet and from humane society publications. The majority excuses the filing of the letters into the record because the trial court made no reference to their content in sentencing the defendant and then relies upon the content to support the trial court's order of partial confinement:

> The letters sent to the prosecutor from throughout the United States demonstrate the wide interest in this matter and establish that, because of the publicity, the punishment would have a deterrent effect. . . . The geographic spread from which these letters came supports the trial court's conclusion as to the deterrent effect of the sentences.

In my view, the letters should not have been considered for any purpose. In <u>State v. Hooper</u>, our supreme court established the following standard for incarceration based on a need for deterrence:

> [W]e will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present <u>in the particular community, jurisdiction, or in the state as a whole</u>, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

29 S.W.3d 1, 10 (Tenn. 2000) (emphasis added). From this, I would hold that a need for deterrence of similar crimes outside this state is irrelevant and would not, standing alone, support a decision to incarcerate. Nevertheless, I would affirm the trial court's order of split confinement. In my view, some incarceration is necessary to avoid depreciating the seriousness of the offenses. <u>See</u> Tenn. Code Ann. § 40-35-103(1)(B).

Finally, I disagree with the majority's conclusion that the trial court properly failed to consider as a mitigating factor that the defendants' conduct "neither caused nor threatened serious bodily injury." <u>See</u> Tenn. Code Ann. § 40-35-113(1). The majority holds that the mitigator is inapplicable because the dogs in the defendants' care had "physical and emotional problems." While that may be an accurate observation, I believe the legislature intended the statute to apply to human life. The application of this factor would not, however, affect the sentence.

_____
GARY R. WADE, PRESIDING JUDGE
