# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 1, 2009

## STATE OF TENNESSEE v. RICKY LEE HATCHEL

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5671     Joseph H. Walker, III, Judge**

**No. W2008-01030-CCA-R3-CD  - Filed February 5, 2010**

The Defendant-Appellant, Ricky Lee Hatchel, was convicted by a Tipton County jury of aggravated assault, a Class C felony and originally sentenced to three years in the Tennessee Department of Correction.  The jury also imposed a $10,000 fine, which was reduced by the trial court to $5,000.  Following a sentencing hearing, the trial court subsequently found that Hatchel qualified for alternate sentencing, and ordered Hatchel to complete one year of community corrections before being transferred to supervised probation.  In this appeal, Hatchel claims: (1) the insufficiency of the evidence; and (2) the trial court erred by allowing the State to introduce photographs of the victim's injuries.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES, and ALAN E. GLENN, JJ., joined.

Gary F. Antrican, District Public Defender, Somerville, Tennessee, for the Defendant-Appellant, Ricky Lee Hatchel.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Richard D. Cartwright, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial**.  The following testimony was presented at Hatchel's trial on March 19, 2008. The victim, Megan Holsapfel, testified that she dated Hatchel for a couple of months beginning in February of 2007.  She stayed overnight at his house on April 16, 2007, although she said they were no longer dating at that point.  Hatchel gave her a ride home the following morning.  Later that day, she received a phone call from Hatchel who said he was

driving to her place to pick her up. He arrived at 3:00 or 4:00 p.m. and appeared "normal." She got into his vehicle, and they drove away.

The victim testified that Hatchel picked up his best friend, Joe Cooper, and Cooper's girlfriend, Emily Koch, before driving to the house of James and Winter Pugh. They arrived at around 5:00 p.m. and socialized in the living room for about an hour. The victim said Hatchel then went to a back room before returning "mad as hell." Hatchel accused the victim of breaking into his house and stealing money and marijuana. He also demanded that she return the stolen items. The victim denied the accusations, but Hatchel continued to demand his stuff back. At some point, Hatchel "came back with a gun." She said Hatchel pointed the gun at her head. The victim described the gun as one with the top portion that can be pulled back like a semiautomatic. Hatchel pushed her, and she fell through a baby gate that enclosed the kitchen. The victim said she was "terrified." She testified that Hatchel "put the gun down after, like, ten, fifteen minutes, and then he walked away, and he didn't say nothing to me after that."

The victim testified that Cooper, Koch, and James and Winter Pugh were present throughout the altercation. The victim believed James Pugh grabbed the gun after Hatchel set it down. She stated that during the altercation, Cooper "just kept nagging and saying off-the-wall, crazy stuff, making me scared.". After Hatchel put the gun down, the victim and the other guests began to leave the Pugh's home. The victim heard Cooper say "something about 'taking her to the bottoms and shooting her' or something." She said she was forced to leave and was not allowed to make a phone call. She walked outside and got into Hatchel's vehicle with Hatchel, Cooper, and Koch. After reviewing the statement that she had given to the police, she recalled that before entering the vehicle, Hatchel said, "if [she] didn't tell him where his stuff was or who had anything to do with it, he was going to shoot [her]."

The victim testified that Hatchel drove the vehicle, and she rode in the front passenger seat. Hatchel remained upset but did not say anything; however, after the victim reviewed her statement to the police, she recalled Hatchel stating, "'It's on now, bitch. I'm going to fuck you up.'" The victim also said Cooper repeatedly threatened to take her to "the bottoms" and shoot her. Consequently, she jumped out of the vehicle once she saw a familiar road. She stated that the vehicle was traveling fifty-five miles per hour. The victim ran to a nearby house and the police were contacted. The victim testified that she and Hatchel dated again some time after the altercation. She said he apologized to her on multiple occasions.

Winter Pugh testified that she entered her house around 5:00 p.m. on the night of the offense, and found the victim and Hatchel arguing in the living room. Hatchel "had the gun, like, down by his side, and he was just looking at her, you know, up in her face, and yelling

and screaming at her." She did not see Hatchel point the gun at the victim. Winter heard Hatchel say, "'I know you did it. You just need to come out, you know, come on out and admit to it.'" Winter said Cooper and Pugh were also present in the living room. Winter went to her bedroom where she found her husband, James, and told him that Hatchel was holding a gun. Winter then returned to the living room and saw Cooper grab the gun from Hatchel. Winter did not hear Cooper say anything to the victim. Winter said the victim, Hatchel, Cooper and Pugh left shortly thereafter at the request of her husband.

James Pugh testified that he met Hatchel through his friendship with Joe Cooper. He did not know the victim prior to the night of the offense. He observed Hatchel and the victim in his living room on the night of the offense arguing about a robbery. James went to another room because he was tired of listening to the argument. He did not hear any death threats during the argument, and he did not see anyone with a gun; however, James recalled that his air pistol was laying on the counter. James told everyone to leave his house after his wife arrived.

Cooper testified that he spoke with Hatchel on the phone before they went to the Pugh's house. In this conversation, Hatchel said that " he had figured out [that the victim], you know, had broken into his house and . . . he was going to confront her." Cooper testified that they were at the Pugh's house for about an hour before Hatchel and the victim left the house. They were gone for forty-five minutes to an hour. Upon return, Hatchel was quiet but obviously upset. Eventually, he started yelling at the victim and accused her of stealing from him. Cooper said Hatchel had caught the victim stealing from him in the past. Hatchel and the victim shoved each other, and the victim fell down and hit a baby gate. Hatchel went outside to cool off; however, he returned with a pistol in his hand. Cooper said the gun looked like a pellet gun.

Cooper initially testified that Hatchel never pointed the gun at the victim. He said Hatchel held the gun to the side of the victim's head. Upon further questioning, Cooper admitted Hatchel did point the gun at the victim's head, and that the victim said she was scared. Cooper acknowledged that he gave the following statement to the police: "[H]e put the gun to her head; she kept slapping the gun away, telling him she was scared." During the altercation, Cooper admitted telling the victim that if she did not tell the truth he would take her to "the bottoms," take her shoes off, and make her walk home. He testified, however, that she chose to ride in Hatchel's vehicle by her own free will. While in Hatchel's vehicle, the victim asked to be dropped off at a friend's house. The victim was told that she would be dropped off where she was picked up.

Hatchel was the sole witness for the defense. He denied threatening the victim with a gun, but conceded he was "pretty aggressive" with her. He testified that he did not remember having a gun during the altercation. Later, he said he could not remember the

altercation because he "blacked out.". He said blackouts run in his family, and he was not drunk or high that evening. He believed that during the altercation, the victim was upset but not afraid. Hatchel said she gave him one or two names of individuals involved in the theft. He testified that the victim was not forced to ride in his vehicle. Hatchel did not recall apologizing about the altercation.

The State called Officer Steven Browder of the Tipton County Sheriff's Office as a rebuttal witness. Officer Browder questioned Hatchel while investigating the aggravated assault. He said Hatchel never mentioned that he blacked out during the altercation.

**ANALYSIS**

**I. Sufficiency of the Evidence**. Hatchel claims the evidence was insufficient to support his conviction for aggravated assault. Specifically, he argues the evidence was insufficient to prove he used or displayed a deadly weapon or caused the victim to be in reasonable fear of imminent bodily injury. The State contends the evidence was sufficient to show that Hatchel assaulted the victim with a deadly weapon. Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn.1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge,

accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Hatchel was convicted under Tennessee Code Annotated section 39-13-102(a)(1)(B), which states:

(a) A person commits aggravated assault who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
(B) Uses or displays a deadly weapon[.]

In defining "assault," Tennessee Code Annotated section 39-13-101(a)(2) states:

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;
(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Here, sufficient evidence was presented that Hatchel assaulted the victim through the use or display of a deadly weapon. Multiple witnesses testified that Hatchel became extremely upset with the victim, accused her of stealing from his home, and demanded that she return the stolen items. The victim and Cooper testified that Hatchel pointed a gun at the victim during the argument. Winter Pugh also stated that Hatchel displayed a gun during the altercation. Multiple witnesses testified that Hatchel shoved the victim, causing her to fall through a baby gate in the kitchen. The victim said she was "terrified," and Cooper recalled the victim saying she was scared. Based on the proof at trial, a rational jury could have found that Hatchel intentionally or knowingly caused the victim to be in reasonable fear of imminent bodily injury. A rational jury could have also concluded that this assault was aggravated by the use or display of a deadly weapon. Hatchel is not entitled to relief on this issue.

**II. Admissibility of Photographs**. Hatchel claims a new trial must be granted because the trial court improperly allowed photographs of the victim's injuries. These injuries were incurred after she jumped out of Hatchel's moving vehicle. Hatchel argues the photographs were irrelevant and more prejudicial than probative. The State contends the trial court did not err in admitting the photographs. Upon review, we agree with the State.

The trial court has discretion regarding the admissibility of photographs, and a ruling on this issue "will not be overturned on appeal except upon a clear showing of abuse of discretion." State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). First, a photograph must be "verified and authenticated by a witness with knowledge of the facts" before it can be admitted into evidence. Id. Second, a photograph must be relevant to an issue that the jury must determine before it may be admitted. State v. Vann, 976 S.W.2d 93, 102 (Tenn. 1998) (citing State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994); State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978)), cert. denied, 67 U.S.L.W. 3641 (U.S. Apr. 19, 1999) (No. 98-7661). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, if the photograph's "prejudicial effect outweighs its probative value," it should not be admitted. See Tenn. R. Evid. 401 and 403; Banks, 564 S.W.2d at 951. A relevant photograph "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Banks, 564 S.W.2d at 951. Unfair prejudice has been defined by the Tennessee Supreme Court as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." Id. Photographs must never be used "solely to inflame the jury and prejudice them against the defendant." Id.

Here, the trial court allowed the State to introduce three photographs which show the injuries incurred by the victim after she jumped out of Hatchel's moving vehicle. The photographs reveal considerable injuries to the victim's hands, scalp, left shoulder, and left arm. The defense objected to the introduction of these photographs at trial. It argued the photographs were not relevant to the allegations in the indictment, which charged Hatchel with assaulting the victim by holding and pointing a pistol to the victim's head. The defense also asserted that the photographs were intended to inflame the passions of the jury, and thus were overly prejudicial. The State argued the photographs were relevant to whether the victim was in reasonable fear of imminent bodily injury when Hatchel threatened her with a gun. The trial court overruled the objection without additional comment.

We hold that the trial court did not abuse its discretion in admitting the photographs. The victim's decision to jump out of Hatchel's vehicle demonstrated that she reasonably

feared imminent bodily injury when Hatchel threatened her with a gun. The photographs corroborate the victim's testimony that she jumped out of the vehicle, and were therefore relevant. A closer question is whether the photographs were more prejudicial than probative under Tennessee Rule of Evidence 403. We acknowledge that the probative value of the photographs was somewhat diminished by the testimony of Hatchel and Cooper, which corroborated the victim's testimony that she jumped out of the moving vehicle. The photographs were also potentially prejudicial, as they show injuries to the victim that were not the direct result of Hatchel's actions at the Pugh's house. Nonetheless, we cannot conclude that the trial court abused its discretion in admitting the photographs. The photographs were relevant to a key issue in the case, and their probative value was not outweighed by any unfair prejudice suffered by Hatchel. Accordingly, Hatchel is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE