# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 5, 2011

## STATE OF TENNESSEE v. CHRISTOPHER LYNN INMAN

**Direct Appeal from the Circuit Court for Benton County**
**No. 09-CR-10     C. Creed McGinley, Judge**

_____

**No. W2010-00411-CCA-MR3-CD   -   Filed March 22, 2011**

_____

The Defendant-Appellant, Christopher Lynn Inman, was convicted by a Benton County jury of coercion of a witness, a Class D felony. He was sentenced to two years in the Tennessee Department of Correction and assessed a $5,000 fine. On appeal, Inman claims the evidence was insufficient to support his conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Anthony L. Clark, Paris, Tennessee, for the Defendant-Appellant, Christopher Lynn Inman.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and Jennifer A. Hedge, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Inman was charged in a multi-count indictment with coercion of a witness, child abuse and neglect, possession of a controlled substance, and unlawful drug paraphernalia. The coercion of a witness conviction stems from statements Inman made to Amy Holland, a witness in the criminal assault proceedings against Candace Prince, Inman's ex-wife. Holland testified that Inman said that "he wanted to beat my ass and called me a narc and a whore."

Some discussion regarding the relationship of the parties is necessary for a full understanding of this case. Candace Prince testified that she was currently married to Kevin

Prince. She said Inman is the father of her oldest child. Candace Prince testified that she was married to Inman for one year before their divorce. She acknowledged that she was secretly having an affair with Inman. Candace Prince said Kevin Prince would leave town for extended periods of time because of work. While he was gone, Inman would come to her home almost every day and stay overnight. Candace Prince said she contemplated divorcing Kevin Prince and getting back together with Inman. Candace Prince did not know anything about the coercion of the witness charge. She stated she was in the courtroom when the offense occurred; however, she did not hear or see any of the threats.

Officer Ricky Pafford of the Benton County Sheriff's Department testified about the coercion of the witness charge. The offense occurred about two weeks after a police search of Candace Prince's home. Officer Pafford said Candace Prince had been charged in a separate matter with assaulting Kevin Prince. The assault charge was addressed before the General Sessions Court. Officer Pafford was present for this proceeding. Inman was also in the courtroom. Officer Pafford stated that during the first break, he was approached by Sharon Griffith. She indicated that Inman threatened a prospective witness named Amy Holland inside of the courtroom. Based on this conversation, Officer Pafford took written statements from Griffith and Holland. Officer Pafford did not hear or see the threats made by Inman. On cross-examination, Officer Pafford testified that Holland claimed in her written statement that she did not care about Inman's threats. Officer Pafford said Holland told him, however, that she was afraid of Inman. Officer Pafford acknowledged that he did not include Holland's verbal statement about being afraid in his report.

Holland testified that she had been subpoenaed to testify in the assault proceeding. She stated that she knew Inman before the offense occurred. Holland was also acquainted with Kevin Prince because they dated when they were teenagers. In the courtroom, she sat next to Griffith who she knew from school. Holland was also acquainted with Candace Prince. Holland testified that she had no interaction with Inman before she came to the courtroom. She said he sat "on the other side of the courtroom up front." Holland described Inman as being "in shackles." She recalled sitting in the back of courtroom. Holland stated that during the proceeding, Inman "turned around and told me that he wanted to beat my ass and called me a narc and a whore." She testified that Inman did not say anything out loud; however, he mouthed the threats. Holland stated, "He turned around and looked me square in the eye and said it. And I just smiled back at him like I never even paid any attention to it." She added, "You could clearly see what he was saying." Holland read aloud the statement that she gave to the police. This statement read in part:

> I was sitting beside Sharon Griffith when Chris Inman turned around and
> started cursing me and calling me names.

I didn't say anything back to him. I only smiled showing I didn't care. He called me a narc and a dirty whore and said I was going to get my ass kicked. I was subpoenaed to come to court over [the] Kevin Prince situation.

Holland testified that Inman's threats caused her to be offended, upset, and scared. She met with Officer Pafford after the threats were made. Holland said she was in the courtroom that day to testify on behalf of Kevin Prince. She said Inman "hasn't liked me for some time now." Holland did not believe that Inman and Kevin Prince had a good relationship.

Griffith testified that she used to be in a relationship with Inman. They had a child together. Griffith said she was not subpoenaed. Despite her connection to Inman, she went to the courtroom to support Kevin Prince. Griffith said she and Kevin Prince were dating when this occurred. Griffith testified that she sat next to Holland during the proceeding. She said they were friends. Griffith stated that during the proceeding, Inman turned around and called Holland a "dirty whore and a snitch[.]" Inman also threatened that "he was going to kick her ass." Griffith opined that Inman was "mad" because Holland was going to testify for Kevin Prince. Griffith said Inman was in a relationship with Candace Prince at the time. Griffith contacted Officer Pafford after the threats were made.

In overruling the motion for judgment of acquittal, the trial court stated,

. . . I [am] constrained [sic] to find that calling someone a dirty whore, snitch, and that he would quote "kick her ass" would be designed to influence the [witness] to testify falsely or withhold truthful information. But once again, taking the evidence most favorable to them, I think it creates a jury question.

Inman was subsequently convicted of coercion of a witness.[1] He was sentenced to two years in the Tennessee Department of Correction and assessed a $5,000 fine. Inman filed a motion for new trial, which was overruled. He then submitted a notice of appeal. The notice was untimely; however, this court chose to waive the thirty-day filing requirement pursuant to Rule 4(a) of the Tennessee Rules of Appellate Procedure. This appeal is properly before this court.

## ANALYSIS

Inman claims the evidence did not support his conviction for coercion of a witness. He contends the evidence failed to show that he intended to influence Holland. Inman sets forth the following argument:

---

[1]Inman was also convicted of possession of marijuana.

The alleged victim of the coercion did not hear the alleged remarks, made from across the Courtroom, while the Appellant was in custody and in shackles of the Benton County Sheriff's Office. In addition, Appellant contends the remarks made at best could only be a threat to do future harm, and therefore [were] not actionable considering his then, present condition.

In response, the State claims a rational juror could have found that the elements of the offense were met. Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). Recently, the Tennessee Supreme Court adopted the United States Supreme Court standard that direct and circumstantial evidence should be treated the same when reviewing the sufficiency of the evidence. See State v. Genaro Dorantes, No. M2007-01918-SC-R11-CD, 2011 WL 208306, at *12 (Tenn. 2011). Finally, the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Inman was convicted of coercion of a witness, which is codified under Tennessee Code Annotated section 39-16-507. The purpose behind this section is to punish individuals "who, through coercion, impair the integrity or availability of witnesses who may be called to offer evidence at official proceedings." T.C.A. § 39-16-507, Sentencing Commission Comments. Section 39-16-507 states:

(a) A person commits an offense who, by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to:

(1) Testify falsely;

(2) Withhold any truthful testimony, truthful information, document or thing; or

(3) Elude legal process summoning the witness to testify or supply evidence, or to be absent from an official proceeding to which the witness has been legally summoned.

T.C.A. § 39-16-507(a) (2009). Coercion is defined as "a threat, however communicated, to . . . [c]ommit any offense." T.C.A. § 39-11-106(a)(3)(A) (2009).

In this case, a rational juror could have found that the elements of this offense were met. The testimony of Holland and Griffith established that Inman used means of coercion. Holland testified that she was sitting in the courtroom when Inman turned around and looked at her "square in the eye." She said Inman told her that he wanted to "beat my ass." He also called her a "narc" and a "whore." Holland acknowledged that Inman only mouthed these threats; however, she stated, "You could clearly see what he was saying." Griffith was sitting next to Holland in the courtroom. She testified that Inman called Holland a "dirty whore and a snitch[.]" According to Griffith, Inman also stated that "he was going to kick [Holland's] ass." The foregoing testimony shows that Inman used means of coercion by threatening to assault Holland.

As closer question is whether Inman attempted to influence Holland to testify falsely or to withhold truthful testimony. Under section 39-16-507, the defendant is not required to explicitly demand that the witness alter his or her testimony or abstain from testifying. See State v. Larry D. Laforce, II, No. E2007-00334-CCA-R3-CD, 2008 WL 538969, at *5 (Tenn. Crim. App., at Knoxville, Feb. 27, 2008) ("[T]here is no requirement that the defendant's threat explicitly state a request to withhold or change testimony."). A defendant's action may give rise to an inference that the defendant intended to influence a

witness.  See State vs. Thomas Carter, No. E2005-00731-CCA-R3-CD, 2006 WL 2714443, at *7 (Tenn. Crim. App., at Knoxville, Sept. 22, 2006) ( citing State vs. Cedron Orgain, No. 01C01-9808-CC-00334, 1999 WL 756197, at *3 (Tenn. Crim. App., at Nashville, Sept. 27, 1999)).

Here, a rational juror could have inferred that Inman tried to influence Holland to testify falsely or to withhold truthful testimony.  The threats made by Inman were clearly directed at Holland's presence as a witness.  By definition, the terms "narc" and "snitch" rebuke someone's decision to testify.  The use of these derogatory terms, combined with the threat of physical violence, imparted that Holland would be harmed as a result of her testimony.  Holland said Inman's threats caused her to be offended, upset and scared.  The context of Inman's threats was also of particular importance.   Holland said she was subpoenaed to testify at a criminal proceeding concerning Candace and Kevin Prince. Candace Prince had been charged with assaulting Kevin Prince.  Holland said she was going to testify on behalf of Kevin Prince.  Several witnesses presented testimony about the romantic  relationship between Candace Prince and Inman.  Candace Prince acknowledged that she was having an affair with Inman and that she had considered getting a divorce from Kevin Prince.  Inman's relationship to Candace Prince provided sufficient circumstantial evidence of Inman's motive to influence Holland's testimony.  We hold that sufficient evidence was presented that Inman was guilty of coercion of a witness.  He is not entitled to relief on this issue.

**CONCLUSION**

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE