# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 19, 2010

## STATE OF TENNESSEE v. MICHAEL R. SMART

**Appeal from the Circuit Court for Bedford County**
**No. 16818    Lee Russell, Judge**

_____

**No. M2009-02262-CCA-R3-CD - Filed April 12, 2011**

_____

Following a jury trial, the Defendant, Michael R. Smart, was found guilty of sale of a Schedule VI controlled substance, a Class E felony; delivery of a Schedule VI controlled substance, a Class E felony; and simple possession of a Schedule VI controlled substance, a Class A misdemeanor. The trial court merged the sale and delivery convictions and sentenced the Defendant to 2 years for the Class E felony conviction and a consecutive 11 months and 29 days for the Class A misdemeanor conviction. In this appeal as of right, the Defendant contends (1) that the trial court erred in allowing the State to impeach him with his prior conviction of receiving stolen property; (2) that the trial court erred in failing to include the requested defense of entrapment in the jury instructions; and (3) that the trial court erred in sentencing him. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Michael R. Smart.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charles Frank Crawford, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Although the Defendant is not challenging the sufficiency of the convicting evidence for his convictions, we will provide the following factual summary to establish context for the Defendant's issues on appeal. This case arose from an undercover drug operation where

Tammy Nelson, the Defendant's niece, contacted Officer Timothy Miller of the 17th Judicial District Drug Task Force and told him that she would serve as an undercover confidential informant and purchase marijuana from the Defendant. Ms. Nelson offered her assistance hoping that she would receive leniency in a pending case against her and the Defendant regarding the sale of Xanax to a confidential informant.[1]

Ms. Nelson called Officer Miller from her house and then traveled to her mother's[2] residence, the site of the transaction, to meet the Defendant on November 13, 2008. Ms. Nelson had asked her mother, Lisa Horn, to contact the Defendant because she was not "on the best of terms" with the Defendant "at that moment." Ms. Horn contacted the Defendant and asked him if he would purchase some marijuana for one of her friends. Ms. Horn told the Defendant that Ms. Nelson would conduct the transaction outside of the house in order to avoid any interference from her husband, who did not approve of her activities. The Defendant complied and contacted Ms. Nelson when he was on his way to collect the money for the purchase. The Defendant told Ms. Nelson that he would collect the money, drive to town and obtain the marijuana from someone, and then bring the marijuana to her.

Officer Chad Webster of the Lewisburg Police Department was assigned to assist Ms. Nelson in the undercover buy of marijuana from the Defendant. When Officer Miller arrived at the site of the transaction, he searched Ms. Nelson, hid a recording device on her person, and provided her with approximately $130[3] in "prerecorded confidential funds." Officer Webster hid in the garage area of the residence, where he observed Ms. Nelson as she handed the Defendant the money. After the Defendant left, Officer Webster searched Ms. Nelson to confirm that she had given the Defendant the entirety of the "prerecorded confidential funds."

Officer Miller followed the Defendant, who drove to another residence. The Defendant and Curtis Walker, who had been riding with the Defendant, went inside the residence. Several minutes later, the Defendant and Mr. Walker returned to the vehicle and drove to a second residence. The two then drove back to the site of the undercover transaction. Officer Webster observed the Defendant when he returned and gave Ms. Nelson approximately three quarters of an ounce of marijuana. As the Defendant was walking away, he told Ms. Nelson that she should take some of the marijuana for herself. The Defendant left, and the officers followed.

---

[1] The Defendant set up the transaction after Ms. Nelson asked him to help her sell some Xanax.

[2] The Defendant's sister.

[3] There was a dispute over the amount of money that Officer Webster gave Ms. Nelson.

The Defendant stopped at a gas station, and as he was driving away from the gas station, the Defendant was stopped by one of the officers. As the Defendant was removed from the vehicle, Officer Miller smelled a "strong odor of not only raw marijuana but burnt marijuana, which has two distinct different smells" coming from the vehicle and from the Defendant. The Defendant was handcuffed, and Officer Miller advised the Defendant that he was arresting him pursuant to a warrant in the Xanax case.

Officer Miller informed Mr. Walker, who was inside the vehicle, that the Defendant was being arrested. After removing Mr. Walker from the vehicle, Officer Miller searched the vehicle and found a smashed cigarette package "between the driver side door and the seat." Inside the package, Officer Miller found "approximately a quarter ounce" or "five to seven grams" of what appeared to be marijuana. Officer Miller also collected a "partially burnt marijuana cigarette" that was on the "passenger side floorboad." When Officer Miller confronted the Defendant with the marijuana in the cigarette pack, the Defendant admitted ownership of the marijuana.

## ANALYSIS

### I. Prior conviction

The Defendant contends that the trial court erred in allowing the State to question the Defendant about his prior conviction of receiving stolen property when the State merely possessed the National Crime Information Center (NCIC) report as evidence of the conviction.[4] The Defendant further contends that the trial court failed to determine whether the probative value of the conviction relative to the Defendant's credibility outweighed the prejudicial effect. The Defendant asserts that the State was unable to provide any objective proof of the prior conviction, thereby leaving the jury with an "unproved and unsupported innuendo that the Defendant had been convicted of a crime in New Hampshire." The State responds that the NCIC report provided the State with a good faith basis to question the Defendant about the prior conviction. The State concedes that the trial court failed to make specific findings of fact relative to the probative value of the impeaching conviction but asserts that Tennessee courts have held that the probative value of similar convictions outweighed the prejudicial effect. The State further responds that if the trial court erred in permitting the line of questioning, then any error was harmless.

After the close of the State's proof, defense counsel requested a ruling relative to the admissibility of a prior conviction in New Hampshire for receiving stolen property, which is codified as theft in Tennessee. See Tenn. Code Ann. § 39-14-101. Defense counsel argued that the State should be precluded from questioning the Defendant about the

---

[4]At the sentencing hearing, the State produced a certified copy of the judgment of conviction.

conviction because the only evidence of the conviction was in the form of an NCIC report, which reflected that the Defendant had a prior conviction in New Hampshire for receiving stolen property in 2001. After hearing argument from defense counsel and the State, the trial court concluded that the State could ask the Defendant whether he was the same Michael Smart who had a prior conviction for receiving stolen property in New Hampshire. However, the trial court instructed the State that they could not admit the NCIC report into evidence if the Defendant denied that he had a prior conviction. Defense counsel never requested a ruling relative to the impeaching conviction's probative value on credibility, and the trial court never issued a ruling in that regard.

On cross-examination, the Defendant denied any knowledge of a conviction of receiving stolen property in New Hampshire. Testimony was elicited from the Defendant and Ms. Nelson that indicated that the Defendant had lived in New Hampshire for a significant period of time before moving to Tennessee.

Rule 609(a)(3) of the Tennessee Rules of Evidence allows for the admission of a prior conviction to impeach the credibility of a defendant testifying at trial. Such impeaching convictions must be either "punishable by death or imprisonment in excess of one year under the law under which the witness was convicted" or "must have involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). The rule further provides,

> [i]f the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.

Tenn. R. Evid. 609(a)(3) (emphasis added). A trial court's decision to admit a prior conviction under Rule 609 of the Tennessee Rules of Evidence will not be reversed on appeal unless the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

A conviction for receiving stolen property is a crime which "involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2); see State v. Martin, 642 S.W.2d 720, 724 n. 1 (Tenn. Crim. App. 1982) (stating that a conviction of concealing stolen property was "facially in the honesty and false statement category and clearly admissible for impeachment purposes if defendant had elected to take the witness stand"). Because the Defendant did not request a ruling relative to the impeaching conviction's probative value on credibility, the trial court was not required to issue lengthy findings of fact in that regard. Tenn. R. Evid. 609(a)(3); see Neil P. Cohen et al., Tennessee Law of Evidence § 6.09[10][c] (5th ed. 2005) (stating that the credibility determination must be made "on request"). In any event, we

believe that relative to the Defendant's credibility, the probative value of the impeaching theft conviction outweighed any unfair prejudicial effect because the Defendant was on trial for selling cocaine, not theft. See State v. Addison, 973 S.W.2d 260, 268 (Tenn. Crim. App. 1997) (discussing probative value of misdemeanor theft, larceny, and receiving stolen property convictions); State v. Crane, 780 S.W.2d 375, 377 (Tenn. Crim. App. 1989) (discussing probative value of a conviction of concealing stolen property).

The next issue is whether the trial court erred in allowing the State to question the Defendant when the only proof of the conviction was in the form of an NCIC report. We acknowledge that the State procured the certified judgment of conviction after the trial; however, the State only possessed the NCIC report at trial.

Our supreme court has held that NCIC reports "are not admissible as a substitute for certified copies of court convictions nor for any other purpose." State v. Buck, 670 S.W.2d 600, 607 (Tenn. 1984). In so holding, the supreme court further stated,

> The information in such reports is pure hearsay, of a dubious degree of accuracy, prepared for purposes other than court use, contains information that is likely to be prejudicial under all circumstances and is not the best evidence of matters that can be proven by reliable, documentary evidence.

Id. While the decision in Buck related to the admissibility of NCIC reports at a sentencing hearing, this court has held that the State may not use an NCIC report as a basis for impeaching a witness with a prior conviction. State v. Philpott, 882 S.W.2d 394, 403 (Tenn. Crim. App. 1994).

In Philpott, the trial court precluded questioning about a witness's prior conviction for criminal trespass because the conviction was not a crime involving dishonesty. Id. At trial, the State attempted to question the witness about another prior conviction for receiving and concealing stolen property. This conviction was listed on an NCIC report. The trial court precluded further questioning on the conviction because the State only possessed the NCIC report as evidence of the conviction.[5] Id. However, the State continued to question the witness about the conviction despite the trial court's ruling. Id. This court held that questioning the witness relative to the conviction was impermissible but ultimately concluded that the issue was waived for defense counsel's failure to request a mistrial. Id. at 404. In so concluding, this court stated, "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by

---

[5]The witness had never actually been convicted of the offense; therefore, the NCIC report erroneously reflected a conviction of receiving and concealing stolen property.

evidence." Id. at 404. Accordingly, we conclude that the trial court in this case erred in allowing questioning relative to the Defendant's prior conviction. However, we believe that the error was harmless and that the questioning regarding the conviction did not affect the judgment. See Tenn. R. App. P. 36(b); see also State v. Joslin, No. 03C01-9510-CR-00299, 1997 WL 583071, at *30 (Tenn. Crim. App. Sep. 22, 1997), perm. app. denied (Tenn. Nov. 9, 1998) (concluding that the erroneous admission of questioning regarding a defendant's prior conviction was harmless).

## II. Jury instruction

The Defendant contends that the trial court erred in refusing to instruct the jury on the defense of entrapment. The State responds that the proof did not raise a defense of entrapment; therefore, the trial court did not err in refusing to instruct the jury on the defense.

"A defendant is entitled to the issue of the existence of a defense being submitted to the jury when it is fairly raised by the proof." State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998) (citing Tenn. Code Ann. § 39-11-203(c), (d)). In determining whether to instruct the jury on the defense, the trial court must "consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993).

The Defendant's claim of entrapment is based on the following evidence. At trial, the Defendant testified that Ms. Nelson contacted him on November 13, 2008 and asked if he could purchase some marijuana for her. The Defendant told her that he would not purchase the marijuana for her because he had "quit everything" and did not "want to deal with it." After refusing to help Ms. Nelson procure marijuana, his sister called him and told him that she needed a favor. Ms. Horn told him that "she needed to get some marijuana for a friend." The Defendant told Ms. Horn that he "really didn't want to" but that he would "try" because she was his sister. He admitted that he did not see Ms. Horn on November 13, 2008 but explained that Ms. Horn asked him to deliver the marijuana to her daughter because her husband would not approve of the transaction. The Defendant further explained that he would not have bought the marijuana for Ms. Nelson and that he only agreed to help because he believed that he was helping his sister, Ms. Horn.

Pursuant to Tennessee Code Annotated section 39-11-505, "It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so." In determining whether a defendant was induced to commit the crime or was predisposed to commit the crime, Tennessee courts analyzes the subjective intent of the defendant. State v. Shuck, 953 S.W.2d 662, 666 (Tenn. 1997). In determining a defendant's predisposition to commit a crime, the following factors are relevant:

the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by law enforcement officials; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense which was overcome only by repeated inducement or persuasion by law enforcement officials or agents; the nature of inducement or persuasion engaged in by law enforcement officials; and any other direct or circumstantial evidence that the accused was ready and willing to engage in the illegal conduct in question.

Id. at 670.

Following our review, we believe that the defense of entrapment was not fairly raised by the proof. The Defendant in this case had a pending charge of selling Xanax to an undercover officer, was only asked twice to commit the crime, and appeared to have profited from his involvement - given the amount of marijuana found in the car. Moreover, the Defendant's testimony does not even suggest that he was induced to commit the crime when the Defendant refused a request to purchase drugs from his niece but complied with the subsequent similar request from his sister. See Shropshire, 874 S.W.2d at 639 (stating that entitlement to the instruction of entrapment requires evidence of "governmental inducement" and the "defendant's unwillingness to commit a drug conspiracy"). Accordingly, we conclude that the trial court did not err in refusing to issue an instruction on the defense of entrapment.

## III. Sentencing

The Defendant contends that the court erred in setting the length of his sentences, in imposing consecutive sentences, and in denying all forms of alternative sentencing. The State responds that the trial court properly sentenced the Defendant.

Tracy Millstead, the Defendant's 21-year-old girlfriend, testified at the sentencing hearing. Ms. Millstead testified that she and the Defendant had a child together and that the child was four years old at the time of the hearing. She stated that the Defendant had been living with them for approximately one year until he was arrested. During that time, the Defendant provided financial assistance and assisted in raising and caring for their son. She stated that she did not work and that their son had asthma and attention deficit hyperactivity disorder. On cross-examination, she admitted that she was 17 years old when she gave birth to her son; therefore, she conceived the child with the Defendant before she was 18 years old. She stated that the Defendant, who was 28 years old at the time of trial, was approximately 24 years old at the time she conceived their son. She also admitted that she had been receiving assistance from the State to raise her son and that the Defendant owed

approximately $5,000 in child support. She stated that the Defendant had a court case pending regarding his failure to pay child support.

The State introduced a certified judgment of conviction for the Defendant's 2001 New Hampshire conviction. At the conclusion of the hearing, the trial court denied alternative sentencing and sentenced the Defendant to 2 years for the Class E felony and a consecutive 11 months and 29 days for the Class A misdemeanor.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The appealing party has the burden of showing that the imposed sentence is improper. Id. If review of the record reflects that the trial court properly considered all relevant factors, gave due consideration to each factor, and its findings of fact are adequately supported by the record, this court must affirm the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Should the record fail to demonstrate the required considerations by the trial court, then appellate review of the sentence is purely de novo. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review, the trial court must "place on the record, either orally or in writing, what enhancement and mitigating factors were considered, if any, as well as the reasons for the sentence." Tenn. Code Ann. § 40-35-210(e).

Tennessee's sentencing act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In conducting its de novo review with a presumption of correctness, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

## A. Length of sentences

Relative to the length of his sentences, the Defendant contends that the trial court overstated the significance of his criminal history when enhancing his sentences. The Defendant asserts that his prior convictions consisted of "a prior simple possession and an apparently misdemeanor possession of stolen property several years earlier." The Defendant also asserts that consideration of the fact that he conceived a child with an underage female is mitigated by the fact that he married her and remained with her, while fathering the child. The State responds that the trial court properly sentenced the Defendant after considering the necessary purposes and principles of the sentencing act.

In setting the length of the Defendant's sentences, the trial court applied one enhancement factor and one mitigating factor. As to the enhancement factor, the trial court found that the Defendant had a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). In so finding, the trial court referenced the Defendant's two prior convictions – one conviction in 2009 and the New Hampshire conviction from 2001. The trial court also noted that the Defendant had conceived a child with a 17-year-old female and had admitted to selling drugs prior to the activities that formed the basis of the convictions in this case. The trial court also found but gave little weight to the fact that the Defendant's

behavior neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). Following our review, we conclude that the trial court's application of the enhancement and mitigating factors is supported by the record and that the trial court's sentencing decision comports with the purposes and principles of the 1989 Sentencing Act.

### B. Consecutive sentences

Relative to the trial court's imposition of consecutive sentences, the Defendant contends that the trial court "overstated" his criminal history. The Defendant asserts that the trial court "overused" his criminal history when it referenced his criminal history as a basis for imposing the maximum sentence possible, imposing consecutive sentences, and in denying alternative sentencing. The Defendant further asserts that his sentence does not comport with the principles and purposes of the 1989 Sentencing Act. The State responds that the trial court did not err in imposing consecutive sentences because it properly found that the Defendant had an extensive criminal history.

In imposing consecutive sentences, the trial court found that the Defendant had an extensive record of criminal activity based upon his convictions in 2009 and 2001 and other uncharged "criminal conduct." The uncharged criminal conduct related to the Defendant's engaging in sexual intercourse with a 17-year-old female and his admitted history of selling drugs.

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). In all cases where consecutive sentences are imposed, the trial court is required to "specifically recite [on the record] the reasons" behind imposition of consecutive sentences. State v. Palmer, 10 S.W.3d 638, 647-48 (Tenn. Crim. App. 1999) (noting the requirements of Rule 32(c)(1) for purposes of consecutive sentencing); See Tenn. R. Crim. P. 32(c)(1).

Concerning the Defendant's contention that his criminal history was overused, our courts have consistently held that the "same facts and circumstances" may be used to "enhance sentences under applicable enhancement factors and to require those sentences to be served consecutively." State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993). "In fact, this [c]ourt has previously held that consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes is allowed." Id. (citing State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991) (emphasis added). Additionally, the trial court's decision to impose consecutive sentences was supported by the record.

## C. Alternative sentencing

Relative to the trial court's denial of alternative sentencing, the Defendant contends that the trial court's determinations were unsupported by the evidence. The Defendant asserts that confinement was unnecessary to keep him from re-offending because he was attempting to "leave town" when his niece "took specific actions to keep him local and to get him involved in a sale of marijuana." The State responds that the trial court properly denied alternative sentencing.

The Defendant was convicted of a Class E felony and a Class A misdemeanor. Therefore, he was to be "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). "A court shall consider, but is not bound by, the advisory sentencing guideline" when determining whether alternative sentencing is appropriate. Tenn. Code Ann. § 40-35-102(6)(D). Indeed, this consideration does not automatically entitle a defendant to alternative sentencing; rather, sentencing issues must be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d at 235). The defendant must establish his suitability for alternative sentencing. Tenn. Code Ann. § 40-35-303(b).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). The trial court shall also consider the mitigating and enhancing factors as set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for

-11-

the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In denying alternative sentencing, the trial court stated that it was "highly likely" that the Defendant would commit more crimes if he were given an alternative sentence. The trial court referenced the Defendant's denial of his prior criminal conviction in New Hampshire and found that "there [was] a low likelihood that he would have a potential for rehabilitation in the absence of incarceration." Following our review, we conclude that the trial court gave appropriate consideration to the facts and circumstances of the Defendant's case before arriving at its determination. Accordingly, we also conclude that the record supports the trial court's denial of alternative sentencing in this case.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE