IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs July 23, 2024

**STATE OF TENNESSEE v. MICHAEL J. HITE**

**Appeal from the Circuit Court for Hancock County**
**No. 22-CR-029     Alex E. Pearson, Judge**

_____

**No. E2023-00563-CCA-R3-CD**

_____

A Hancock County jury found Defendant, Michael J. Hite, guilty of driving under the influence, first offense. The trial court imposed a sentence of eleven months, twenty-nine days, with Defendant to serve sixty days in confinement and the rest of his sentence on probation. On appeal, Defendant contends the trial court imposed an excessive sentence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender—Appellate Division (on appeal); Todd Estep, District Public Defender; and Roland Cowden and Colby Collins, Assistant District Public Defenders (at trial), for the appellant, Michael J. Hite.

Jonathan Skrmetti, Attorney General and Reporter; Katherine Orr, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Bradley R. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts and Procedural History

The Hawkins County Grand Jury indicted Defendant on one count of driving under the influence and one count of driving while having a blood alcohol concentration of .08 percent or more (DUI per se). *See* Tenn. Code Ann. § 55-10-401(1) and (2). The case proceeded to trial on January 20, 2023. Defendant does not challenge the sufficiency of

the convicting evidence on appeal, but we will summarize the evidence to provide context and because it is relevant to sentencing in this case.

On June 7, 2021, Hancock County Sheriff's Deputy William Gunter was dispatched to a non-injury automobile accident when he "passed a silver Cadillac SUV[-]type vehicle" driving in the opposite direction. The vehicle had its rear bumper "dragging," its left rear wheel "on its rim," and glass "broke[n] out of the whole back of the side and back of the vehicle." Deputy Gunter then turned around and stopped the vehicle, driven by Defendant. Deputy Gunter testified that when he approached Defendant's vehicle, the deputy could smell a "very strong odor of alcohol coming from the car and from [Defendant's] person." The deputy also noticed Defendant had slurred speech. Deputy Gunter asked Defendant about the crash, but Defendant was confused and unaware where he was. According to the deputy, Defendant "wanted to go home, but he didn't know where he lived." Defendant denied he was hurt and said he did not need medical attention.

As their conversation continued, Deputy Gunter asked whether Defendant had been drinking. According to the deputy, Defendant initially denied drinking, but Defendant eventually said "he drank a beer and, in fact, was drinking a beer when he wrecked the car." Deputy Gunter had Defendant exit the car to perform field sobriety tests; the deputy testified that Defendant was unsteady on his feet when exiting the vehicle. Defendant first performed the "heel-to-toe walk" test; according to the deputy, Defendant performed poorly. Deputy Gunter testified he "had to stop [Defendant] because I was in fear he was going to fall down." Deputy Gunter then had the Defendant perform the "finger-to-nose" test in which Defendant stood with his feet together and head tilted upward, attempting to touch his nose while his arms and index finger were extended. Deputy Gunter testified Defendant also performed "poorly" on this test, with the deputy having to hold Defendant upright "a couple of times" because again the deputy feared Defendant "was going to fall down." At that point, Deputy Gunter placed Defendant under arrest and had another officer transport Defendant to the county jail.

Deputy Gunter testified that after Defendant was arrested, Defendant's wife came to the scene to retrieve groceries that were inside Defendant's vehicle. The deputy saw an open can of Bud Light beer "on the floorboard probably a third full." The deputy also saw "an open 24 case pack of Bud Light in the vehicle;" he surmised that the wreck had caused the cardboard box containing the beers to be split open and cans to be thrown about the vehicle. After Defendant's car was towed away, the deputy drove to the reported accident scene, where he saw "a big piece of the back of [Defendant's] car that was [lying] next to the power pole that still had the license plate to that vehicle attached to it." The deputy said this pole was forty to fifty feet from the roadway. The deputy also saw groceries strewn across the field near the pole, along with shattered glass and other debris. The deputy testified that it had rained earlier on the day of the accident and the road was wet.

- 2 -

Based on his assessment of the scene, which included skid marks and the debris field, the deputy said that Defendant "was actually traveling west when he told me he was heading east. He was actually traveling the opposite way when the accident occurred."

Deputy Gunter acknowledged that Defendant was courteous and cooperative during their interaction. Specifically, the deputy said that Defendant was "very cordial with me, very respectful." Defendant and the deputy spoke about Defendant's military service; the deputy testified that Defendant told him about being a paratrooper and having "bad knees." Accordingly, the deputy attempted to administer the field sobriety tests "in a way that [Defendant] was able to" complete.

Deputy Benjamin Hopkins transported Defendant from the traffic stop to the county jail. Defendant consented to a blood draw. Tennessee Bureau of Investigation (TBI) Special Agent Jonathan Thompson tested Defendant's blood sample and determined the sample's blood alcohol concentration was 0.117 percent, above the legal limit of 0.08 percent.

Defendant testified on his own behalf. Defendant said that he drank one beer—a Miller High Life—during lunch the day of the accident, at some point between 11:00 a.m. and 1:00 p.m. Defendant asserted he consumed no other alcoholic beverages before his arrest. He claimed he drove from his home to a chiropractor appointment in Jonesville, Virginia, which he said was forty minutes from his home. Defendant said he visited the chiropractor because of neck and back pain, and that no one at the chiropractor's office attempted to stop him from driving after the appointment. Defendant said that after leaving the chiropractor, he spent thirty to forty-five minutes shopping at Walmart. As with the doctor's appointment, Defendant claimed no one at the store tried to stop him from driving away after shopping.

Defendant further testified that he was not from Hancock County and was lost shortly before the accident. In describing the accident, he claimed he fishtailed on a wet roadway but regained control of his vehicle. He said another vehicle then "came flying around [him] and threw the water . . . into [his] lane in front of [him] and then [he] fishtailed again." Defendant claimed he then spun "completely around 180 degrees and [he] completely lost control of the car and blew into the light pole." Defendant then drove to a diner parking lot, intending to go inside and use the telephone, but when he saw approaching law enforcement vehicles, he waved them down. Defendant claimed that when Deputy Gunter asked if Defendant had anything to drink that day, Defendant first told the deputy no, then told him "not recently" before stating that he (Defendant) had one beer "earlier." Defendant guessed that between three and four hours passed between his consuming the beer and his encounter with police, and he denied that this beer was still affecting him at the time of the accident. Defendant denied having an open container of

alcohol in his vehicle at the time of the accident. He also claimed that neither he nor his wife drank Bud Light, so Defendant had no idea how a can of Bud Light got into his car. He said that after the accident, he may have seen a can of Bud Light near his car and thrown the can into the car. However, he denied having the other beers from the case in his car. Defendant was unable to explain the blood alcohol test results; he acknowledged "what it says on that paper," but he added that in his opinion "that doesn't prove anything."

Deputy Gunter testified in rebuttal and acknowledged that he did not mention either the open beer can or the case of beer in the affidavit of complaint he filed in general sessions court. He said the printed affidavit form did not provide enough room "to add every little detail." Deputy Gunter insisted that he saw the empty can and the 24-can case of Bud Light to which he had testified earlier in trial.

The jury found Defendant guilty on both counts. The trial court merged the two counts into a single conviction for driving under the influence, a Class A misdemeanor. Immediately after the jury returned its verdict, the trial court heard arguments regarding the length and manner of Defendant's sentence.[1] A "Criminal History Report" bearing a State of Tennessee seal and purportedly prepared by a "Robert Freeman" was made an exhibit to the hearing. According to the report, Defendant pleaded guilty to "Petty Theft— 1st Degree more than $400" in Minnehaha County, South Dakota, in October 2012, and received a deferred judgment for "operating a vehicle with intoxication" in Lyon County, Iowa, in 2010. According to the document, after the 2010 offense, Defendant was placed on one year's probation, fined $650, was forced to attend "drunk[-]driving school," had his license revoked, and underwent a substance abuse evaluation. Among the sources of information referenced in the summary was the National Crime Information Center (NCIC). The State noted that the "deferred judgment" was "purged" after twelve years.

The State sought a sentence of eleven months, twenty-nine days for Defendant, with all but forty-five days suspended. Defense counsel argued Defendant should be sentenced to no more than ten days in custody, with the rest of Defendant's sentence to be served on probation, based on Defendant's physical disabilities and his cooperation with police during his arrest.

The trial court found that Defendant previously "pled guilty to theft more than four hundred dollars[.]" The court stated it was "at minimum a prior misdemeanor conviction," and "could be a prior felony," but the court would "consider it a misdemeanor" because it had not "been presented any additional evidence to support otherwise." Regarding the

---

[1] A trial court is not required to conduct a separate sentencing hearing before imposing a misdemeanor sentence, so long as the trial court provides the parties "a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Tenn. Code Ann. § 40-35-302(a).

Iowa driving offense, the court observed "there has been some form of deferred adjudication, which is clear from the records as to a prior incident back in Iowa involving intoxication." Regarding the circumstances of the current offense, the trial court did "not lend any credence to [Defendant's] attempt to suggest that [the samples] had somehow not been properly labeled or had been switched or swapped or something and that had resulted in an improper test." The trial court also found Defendant's testimony inconsistent and observed that Defendant's "attempt to explain away the facts" showed that Defendant "fail[ed] to appreciate his conduct at the time this incident occurred."

Based on what the trial court viewed as Defendant's "not accepting responsibility for his actions," the trial court concluded that Defendant "need[ed] to have a substantial punishment to deter him from future behavior again." The court also found that public deterrence was necessary "because we don't need to be driving down the road drinking a beer and spinning all over the place[.]" The trial court acknowledged Deputy Gunter's testimony that Defendant was cooperative during the deputy's interaction with Defendant, and the court recognized Defendant's prior military service. Nevertheless, the trial court stated the need "to balance that" against the facts and circumstances of Defendant's case. Accordingly, the trial court sentenced Defendant to eleven months, twenty-nine days, with Defendant to serve sixty days in custody and the remainder of his sentence on supervised probation. The trial court stated that it "would have done more," but based on Defendant's cooperation during his arrest and his military service, the trial court "reduced" Defendant's custodial term to sixty days. This timely appeal followed.

## II. Analysis

Defendant's sole assertion on appeal is that the trial court erred in ordering Defendant to serve sixty days in jail for a first offense DUI conviction. Our supreme court has recognized that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a presumption of reasonableness." *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012) (internal quotation marks omitted). A reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

Driving under the influence, first offense, is a Class A misdemeanor. A defendant convicted of first offense DUI shall be "sentenced to serve in the county jail or workhouse not less than forty-eight (48) consecutive hours nor more than eleven (11) months and twenty-nine (29) days." Tenn. Code Ann. § 55-10-402(a)(1)(A). As this court recently recognized, "[O]ur supreme court has not specifically considered whether the *Bise* standard of review applies to misdemeanor sentencing determinations[.]" *State v. Jones*, No.

W2022-01270-CCA-R3-CD, 2023 WL 3451553, at *2 (Tenn. Crim. App. May 2, 2023), *perm. app. denied* (Tenn. Aug. 9, 2023). Our supreme court has, however, stated that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013)). Specifically, our supreme court has stated this standard also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). Accordingly, this panel will apply the *Bise* standard to its review of Defendant's sentence.[2]

A sentence imposed for a misdemeanor offense must be specific and in accordance with the principles, purposes, and goals of the Sentencing Act. Tenn. Code Ann. §§ 40-35-104, -302(b); *State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011) (per curiam); *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). For misdemeanor sentences, the trial court designates "a percentage of that sentence, which the offender must serve before becoming eligible for consideration for rehabilitative programs," usually not to exceed seventy-five percent. *Palmer*, 902 S.W.2d at 394; *see* Tenn. Code Ann. § 40-35-302(d). However, "the legislature has specifically excluded DUI offenders from the provisions of the Act when the application of the Act would serve to either alter, amend, or decrease the specific penalties provided for DUI offenders." *Palmer*, 902 S.W.2d at 394. "A trial judge may designate a service percentage in a DUI case . . . but that percentage may not operate to reduce the mandatory minimum sentencing provisions of the DUI statute." *Id.*

"Ultimately, in sentencing a defendant, a trial court should impose a sentence that is 'no greater than that deserved for the offense committed' and is 'the least severe measure necessary to achieve the purposes for which the sentence is imposed.'" *Jones*, 2023 WL 3451553, at *3 (quoting Tenn. Code Ann. §§ 40-35-103(2), (4)). When imposing a sentence of confinement, the trial court should base the sentence on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or

---

[2] Other panels of this court have also applied *Bise* in reviewing misdemeanor sentencing. *See State v. Kirk*, No. M2022-01334-CCA-R3-CD, 2023 WL 4948887, at *4 (Tenn. Crim. App. Aug. 3, 2023), *no perm. app. filed; State v. Crode*, No. M2021-01371-CCA-R3-CD, 2023 WL 3736157, at *6 (Tenn. Crim. App. May 31, 2023), *no perm. app. filed*; *Jones*, 2023 WL 3451553, at *2; *State v. Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *12 (Tenn. Crim. App. Mar. 12, 2019) (citing to four other cases from this court applying *Bise* to misdemeanor sentencing).

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). However, a person convicted of a misdemeanor offense has no presumption of entitlement to a minimum sentence. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (citations omitted). Furthermore, "a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). In sum, "the trial court has more flexibility in misdemeanor sentencing than in felony sentencing." *Johnson*, 15 S.W.3d at 518.

Here, the trial court imposed a within-range sentence that was consistent with the principles of sentencing. In imposing Defendant's sentence, the trial court cited to Defendant's prior criminal history, the circumstances of the offense, Defendant's lack of credibility and refusal to appreciate the seriousness of his conduct, and the need for deterrence regarding both Defendant and society in general. Regarding Defendant's purported criminal history, we observe that no presentence report was prepared for this case, the judgments for Defendant's prior convictions were not introduced at sentencing, and the person who prepared the one-page summary of Defendant's prior criminal history did not testify at the sentencing hearing.[3] Moreover, Defendant did not offer testimony at the sentencing hearing, conceding to his prior criminal history. Furthermore, the one-page summary referenced the NCIC as the source of information regarding Defendant's criminal history. In a death penalty case, the Tennessee Supreme Court concluded that a NCIC printout detailing a defendant's criminal history was insufficient to establish a defendant's prior conviction for a violent felony for purposes of the "prior violent felony conviction" capital statutory aggravating circumstance. *See State v. Buck*, 670 S.W.2d 600, 607 (Tenn. 1984) ("computer print-outs from the [NCIC] are not admissible as a substitute for certified copies of court convictions nor for any other purpose"). Citing to *Buck*, this court has also concluded that NCIC information, standing alone, is insufficient to impeach a testifying defendant regarding a prior criminal conviction. *See State v. Smart*, No. M2009-02262-CCA-R3-CD, 2011 WL 1431984, at *4 (Tenn. Crim. App. Apr. 12, 2011) (quoting *Buck*, 670 S.W.2d at 607, and citing *State v. Philpott*, 882 S.W.2d 394, 403 (Tenn. Crim. App. 1994)). Accordingly, we conclude that to any extent the trial court set Defendant's sentence based on his purported prior criminal history, such reliance was in error, as the record contained insufficient proof of such a criminal history.[4]

---

[3] Presentence reports are discretionary in misdemeanor cases. *See* Tenn. Code Ann. § 40-35-205(a). Our review of the record shows neither party in this case requested one.

[4] Perhaps cognizant of precedent, the State does not reference Defendant's purported criminal history in its brief.

Nevertheless, the error does not remove the presumption of reasonableness from Defendant's sentence, as the record shows that the sentence otherwise complies with the purposes and principles of sentencing. At trial, Defendant offered testimony that was inconsistent and in which he both minimized his role in the car wreck and offered implausible explanations regarding the facts of the accident. Defendant stated that he flagged down officers after another vehicle caused the wreck, only drank one beer several hours before the accident, denied having a case of beer in his car, claimed that the open beer could have resulted from him picking up cans near the accident site, and said he had no idea how the results of the blood alcohol test came to be. All of this is contrary to the other proof in the case, and we agree with the trial court that the Defendant's testimony was not credible and showed that he took little responsibility for his actions. We agree with the trial court that the imposed sentence was appropriate to deter similar future conduct on Defendant's part.

Defendant takes issue with the trial court's applying little weight to Defendant's cooperation with officers once apprehended and his military service. However, the trial court's comments showed that it considered these factors put forth by the Defendant, as it was required to do. The weight afforded to this mitigating proof was within the trial court's discretion. The trial court stated that it would have ordered Defendant to serve more time in jail but for his cooperation with police and military service, so the trial court ultimately did give weight to these mitigators.

Given the broad discretion afforded trial courts in sentencing generally and in misdemeanor sentencing specifically, as well as the presumption of reasonableness afforded on appeal, we conclude that the trial court did not abuse its discretion by imposing the maximum eleven-month, twenty-nine-day sentence or by ordering Defendant to serve sixty days in custody before being released to probation. Defendant is not entitled to relief.

III. Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
MATTHEW J. WILSON, JUDGE

- 8 -